No. 90-463

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

JERRY GRINDE,

    Petitioner and Respondent,

-vs-

STATE OF MONTANA,

    Defendant and Appellant.

FILED

JUN 18 1991

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Ninth Judicial District,
In and for the County of Toole,
The Honorable R. D. McPhillips, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Hon. Marc Racicot, Attorney General, State of Montana, Helena, Montana; James L. Yellowtail, Assistant Attorney General, State of Montana; Peter Funk, Assistant Attorney General, State of Montana, Helena, Montana; Rae V. Kalbfleisch, Toole County Attorney, Shelby, Montana; Merle Raph, Deputy Toole County Attorney, Shelby, Montana.

    For Respondent:

        Chas L. Jacobson; Conrad, Montana

Submitted on briefs:  May 10, 1991

Decided:  June 18, 1991

Filed:

_____
Clerk

Justice R. C. McDonough delivered the Opinion of the Court.

The State of Montana appeals from an order of the Ninth Judicial District, Toole County, that required the return of Jerry Grinde's driver's license. The District Court held that the seizure of Grinde's license pursuant to § 61-8-402, MCA, was illegal because Toole County police officers lacked justification to stop his automobile. We affirm.

The sole issue on appeal is:

Whether the District Court erred when it ordered the return of Jerry Grinde's driver's license.

On March 17, 1990, at approximately 11:30 p.m., Jerry Grinde (Grinde) was driving a silver Corvette eastward on Main Street in Shelby, Montana. Toole County Sheriff's deputies Ken DeCock and Ron Kinyon were approaching from the opposite direction at the time. As the patrol car approached, Grinde made a right hand turn onto Maple Avenue. After Grinde's car was no longer in sight, the deputies heard "a squealing of tires and the sound of an engine revving up." Because they observed no other vehicles in the immediate vicinity, the deputies attributed the noise to Grinde's Corvette.

The police officers followed Grinde onto Maple Street and observed the vehicle as it turned into an alley. Based upon their belief that Grinde "may have been carelessly or recklessly driving up Maple Avenue" the police activated their lights. Grinde turned into a parking lot and got out of his automobile. According to Deputy DeCock, Grinde appeared unsteady as he left his car and

2

approached the police vehicle. The deputies required Grinde to perform several field sobriety maneuvers. Apparently Grinde failed each test.

Grinde was placed under arrest and taken to the Toole County Sheriff's Department. He was informed of the provisions of the implied consent statute, § 61-8-402, MCA. He refused to take a breath test until he was allowed to speak with an attorney. Deputy DeCock informed him that he did not have a right to speak with an attorney before being required to take a breath test. Grinde continued in his refusal and the officer treated his response as a refusal to take the breath test. Officer DeCock then seized his driver's license under the authority of § 61-8-402(3), MCA.

On April 16, 1990, Grinde filed a petition in District Court seeking reinstatement of his driving privileges pursuant to § 61-8-403, MCA. A hearing was held and the District Court found that the arresting officers lacked justification for stopping Grinde's vehicle. It then ordered the return of Grinde's driver's license. This appeal followed.

Section 61-8-402, MCA, provides that any person who operates a motor vehicle upon ways of this state open to the public shall be deemed to have given consent . . . to a chemical test for the purpose of determining the alcoholic content of his blood if arrested by a peace officer for driving . . . a vehicle under the influence of alcohol.

A person can refuse to submit to this test. However, upon refusal the arresting officer is directed to seize his driver's

3

license. The Department of Justice is then required to suspend that person's driving privileges for a period of at least 90 days. See § 61-8-402(3) and (5), MCA. Upon seizure of his license, a person can obtain judicial review of the administrative suspension of his driving privileges. Review of this action is, however, limited by statute. Section 61-8-403, MCA, provides that judicial review of administrative actions taken pursuant to the implied consent statute is limited to the following issues:

(1) whether the arresting officer had reasonable grounds to believe the following:

a) that the petitioner had been driving or was in actual physical control of a vehicle;

b) that the vehicle was on a way of this state open to the public; and

c) that the petitioner was under the influence of alcohol

(2) whether the individual was placed under arrest; and

(3) whether the individual refused to submit to a chemical test.

Gebhardt v. State (1989), 238 Mont. 90, 775 P.2d 1261.

The State maintains that the District Court exceeded the mandate of this statute when it considered the validity of the initial stop of Grinde's car. According to its argument, the court must limit itself to the three issues recited above. Because the statute contains no reference to the validity or reasonableness of the initial stop, its decision to return Grinde's driver's license was in error and must be reversed.

We disagree. In Armstrong v. State (1990), 47 St.Rep. 2057, 800 P.2d 172, we held that in order to meet the requirements of §

4

61-8-403, MCA, the State must show that the police officer had reasonable grounds to make an investigatory stop of the defendant's vehicle. Unfortunately, we did not adequately set forth the rationale for this conclusion. This omission on our part has caused some confusion on the part of the parties to this action.

As stated above, a court reviewing the suspension of a driver's license is limited to only three issues. It must determine first, whether the arresting officer had reasonable grounds to believe that the petitioner was in control of a vehicle upon a public way while he was under the influence of alcohol. Second, it must determine whether the individual was placed under arrest. And third, it must determine whether the individual refused to submit to a chemical test.

In the instant case, there is no doubt that Grinde was in control of a vehicle upon a public way. Nor do we doubt that the police officers, after having stopped Grinde's vehicle and observing his demeanor, had reasonable grounds to believe he was intoxicated. The parties agree that Grinde refused to submit to a chemical test.

Therefore, the only issue in dispute is whether Grinde was placed under arrest. Under the facts of this case, the police officers must first have had a "particularized suspicion of some kind of wrong doing" before they could legally stop Grinde's vehicle. State v. Gopher (1981), ___ Mont. ___, 631 P.2d 293. Without this suspicion the initial stop was illegal and the resulting arrest invalid. If the arrest is invalid the second

5

element articulated in § 61-8-403, MCA, cannot be met and the State cannot legally suspend Grinde's license. For an arrest to be established, the right to make an arrest must be established. To say otherwise is to declare that the arrest requirement of the statute could be established even though a police officer lacked any legal justification to take a person into custody or hold him in temporary detention.

The District Court found, and we agree, that the sheriff's deputies were not justified in stopping Grinde's car. Throughout their personal observation of Grinde's car, they saw no evidence of erratic driving. On the contrary when they observed Grinde's vehicle, it was being driven in a safe and prudent manner, well within the speed limit. There was, therefore, no particularized suspicion of wrongdoing on his part and their stop of his vehicle was illegal. The resulting arrest was similarly illegal and the District Court properly returned his driver's license.

The meaning of this decision should be clearly understood. As stated in Armstrong, a police officer making a legal stop is not prevented from further determining that the driver is under the influence of alcohol, placing him under arrest and then requesting that the driver submit to a chemical test under § 61-8-402, MCA.

A legal stop can occur when a police officer has a particularized suspicion comprised of (1) objective data from which an experienced officer can make certain inferences; and (2) a resulting suspicion that the occupant of a certain vehicle is or has been engaged in wrongdoing or was a witness to criminal

6

activity. State v. Gopher (1981), ___ Mont. ___, 631 P.2d 293. Legal stops can also occur in noncriminal, noninvestigatory contexts. For example nothing prevents a police officer from making a stop to deliver an emergency message, assist a stranded motorist or warn of an impending danger. A police officer can legally stop a vehicle for a bona fide reason which is related to functions within his authority and duties. See People v. Davis (Col. 1977), 565 P.2d 1347. If, after making such a stop, the police officer reasonably believes the driver to be under the influence of alcohol, he can make an arrest and require submission to a chemical test.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

7