No. 92-298

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

THE STATE OF MONTANA,

        Plaintiff and Respondent,

   v.

ROBERT DUANE ANDERSON,

        Defendant and Appellant.

APPEAL FROM:   District Court of the Nineteenth Judicial District,
In and for the County of Lincoln,
The Honorable Robert S. Keller, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

            Donald L. Shaffer, Attorney at Law,
            Libby, Montana

        For Respondent:

            Hon. Marc Racicot, Attorney General,
            John Paulson, Assistant Attorney General,
            Helena, Montana; Scott B. Spencer,
            Lincoln County Attorney, Libby, Montana

**FILED**

JUN 1 - 1993

Filed: *Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs:  December 17, 1992

Decided:  June 1, 1993

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

Defendant Robert Duane Anderson was convicted in the Nineteenth Judicial District, Lincoln County, of Criminal Possession of Dangerous Drugs with Intent to Sell in violation of § 45-9-103, MCA. Anderson appeals from the District Court's denial of his motion to suppress evidence obtained in the warrantless search of his vehicle. We reverse and remand.

The dispositive issue on appeal is:

Did the Lincoln County Sheriff's Department have a particularized suspicion to justify an investigative stop of the defendant's vehicle?

In the early afternoon on Tuesday, October 8, 1991, the Lincoln County Sheriff's Department received a tip that Robert Duane Anderson and another individual were leaving Libby, Montana, and driving to Washington to retrieve a large quantity of marijuana. The informant told Officer Don Bernall that Anderson and his fellow passenger would be traveling in Anderson's blue Toyota pickup and that they would be returning to Montana in the late night on October 8, 1991.

Officer Bernall discussed the tip with County Attorney Scott B. Spencer and they decided the tip should be confirmed before applying for a search warrant. They devised a stakeout strategy to verify the tip and to conduct further investigation. By approximately 6:00 p.m. on October 8, 1991, the plan was implemented.

2

The dispatcher at the Lincoln County Sheriff's Office directed Officers Doug Johnson and Klint Gassett to drive in two separate patrol cars to the Idaho-Montana border on U.S. Highway 2. Two other officers were directed to the Idaho-Montana state line on Highway 56. The officers were instructed to wait in their positions until they received a message from Officer Bernall that he had sighted Anderson's blue pickup, and once the pickup crossed the Idaho border into Montana, the officers were to stop it for further investigation.

Night fell, and in the early morning hours of October 9, 1991, Officer Bernall traveled west into Idaho on U.S. Highway 2, in an effort to locate Anderson's pickup. At about 1:20 a.m., Officer Bernall sighted a blue pickup traveling eastbound toward Montana. Officer Bernall alerted Officers Johnson and Gassett by radio that he had sighted what he believed to be Anderson's pickup. Officer Bernall instructed the two officers to verify the pickup's license plate by following it. Anderson passed the two patrol cars on Highway 2, just inside the Montana border. By following the pickup, the officers confirmed that the license plate was Anderson's.

Officer Gassett instructed Officer Johnson to conduct a traffic stop on Anderson's pickup. Officer Gassett testified at trial that although Anderson had not violated any traffic laws to initiate a traffic stop, the officers conducted such a stop nonetheless. Officer Johnson activated his red top lights and

3

signalled to Anderson to pull to the side of the road. Anderson stopped his pickup.

Officer Johnson shined his spotlight on the pickup. Neither of the officers approached the stopped vehicle to ask the driver or passenger for a driver's license, proof of identification, or proof of insurance, despite not knowing Anderson or the passenger. The officers yelled to the men to get out of the pickup. Officer Gassett called the passenger Michael Hathaway. Michael Romine stepped out of the passenger's side of the pickup and walked into the ditch beside the highway. Officer Gassett pulled his gun and yelled at Romine to "get his hands up," and to come over to his patrol car. Romine complied and proceeded toward the officer as instructed.

When Romine reached the patrol car, Officer Gassett directed him to lay spread eagle against the car with his hands on the hood. The officer conducted a pat-down search on Romine (which the officer later testified was for the purpose of looking for weapons that could harm the officers). During the pat-down, the officer felt and removed a small, hard object in Romine's right shirt pocket. The object was approximately three inches long and three-quarters inch in diameter. It was a single hit marijuana pipe. Officer Gassett also removed Romine's wallet from his pocket, told Romine he was under arrest, handcuffed him, and placed him in the back seat of the patrol car.

4

Officer Johnson conducted a pat-down search on Anderson, but did not arrest him. The officers detained Anderson in the area of the patrol cars. Officer Bernall arrived a short time later.

Subsequent to the stop, the removal of both Anderson and Romine from the pickup, and the initial body pat-down searches, Officers Bernall and Gassett conducted a search of Anderson's pickup. On the floorboards of the pickup on the driver's side, Officer Bernall discovered a brown paper grocery bag. The top of the bag was rolled shut. Officer Bernall opened the bag and observed what he believed to be marijuana. The officers arrested Anderson for possession of dangerous drugs.

Officer Bernall drove the pickup to Libby and impounded the vehicle. The officers then obtained a search warrant for the pickup. At approximately 3:40 a.m., on October 9, 1991, the officers searched the pickup and found 11 pounds of marijuana behind the pickup seat.

On October 9, 1991, the State formally charged Anderson by complaint with the offense of Criminal Possession of Dangerous Drugs with Intent to Sell in violation of § 45-9-103, MCA. At a scheduled suppression hearing, Anderson made a motion to suppress physical evidence obtained in the search of his pickup, based on the alleged illegality of the search. The District Court denied Anderson's motion. Anderson then entered an *Alford* plea, preserving his right to appeal the refusal to suppress the evidence seized from the vehicle. The District Court accepted Anderson's plea and sentenced him to 13 years in prison. Anderson appeals the court's

5

denial of his motion to suppress the evidence obtained in the search.

The issue on appeal is whether the Lincoln County Sheriff's Department had a particularized suspicion to justify an investigative stop of the defendant's vehicle.

Anderson contends the State's evidence was obtained from an illegal search of his pickup, and therefore, the District Court erred when it denied his motion to suppress. We agree with Anderson that the warrantless search of his pickup and subsequent seizure of the contraband were unlawful. We conclude that the Lincoln County Sheriff's officers conducted an unjustified investigatory stop of Anderson's pickup and that, therefore, the search of that vehicle was illegal.

In 1968, the United States Supreme Court recognized that a police officer may stop an individual to investigate possible criminal behavior even though there is no probable cause to make an arrest. *Terry v. Ohio* (1968), 392 U.S. 1, 22, 88 S. Ct. 1868, 1880, 20 L. Ed. 2d 889, 906-07. The Supreme Court also recognized, however, that the Fourth Amendment applies to seizures of the person, *Terry*, 392 U.S. at 9, and investigatory stops such as the stop of Anderson's pickup. *United States v. Cortez* (1981), 449 U.S. 411, 417, 101 S. Ct. 690, 694-95, 66 L. Ed. 2d 621, 628. In *Terry*, the Supreme Court held that an unparticularized suspicion or "hunch" is not sufficient cause to stop and frisk a person, and that an investigatory stop and frisk will be justified only when it is

6

based on specific, articulable facts from which the officer could reasonably infer that the individual is engaged in criminal activity and is armed and dangerous. *Terry*, 392 U.S. 1.

In *Cortez*, a post-*Terry* decision regarding investigative stops, the United States Supreme Court recognized that terms like "articulable reasons" and "founded suspicions," referred to by courts in cases such as *Terry*, are not self-defining, and that further guidance was necessary to know when an officer has sufficient cause to make an investigatory stop. *Cortez*, 449 U.S. at 417.

In *Cortez*, the Supreme Court held that to justify an investigative stop of a vehicle, detaining officers must have a particularized suspicion comprised of (1) objective data and circumstantial evidence from which an experienced officer can make inferences, and (2) a resulting suspicion that the occupant of a certain vehicle is or has been engaged in wrongdoing. *Cortez*, 449 U.S. at 418.

In *State v. Gopher* (1981), 193 Mont. 189, 631 P.2d 293, we adopted the *Cortez* standard required to justify a valid investigatory stop of an individual or vehicle. We held that probable cause was no longer necessary in Montana to make a limited and reasonable investigatory stop of an individual or vehicle; and that the lower particularized suspicion standard, as set forth in *Cortez*, was sufficient justification for a permissible stop.

7

In 1991, the Montana Legislature amended the investigative stop statute to reflect the particularized suspicion standard set forth in *Gopher*. Section 46-5-401, MCA, provides:

> Investigative Stop. In order to obtain or verify an account of the person's presence or conduct or to determine whether to arrest the person, a peace officer may stop any person or vehicle that is observed in circumstances that create a particularized suspicion that the person or occupant of the vehicle has committed, is committing, or is about to commit an offense.

Both *Cortez* and *Gopher* are clear that objective data must form the basis of the officer's particularized suspicion before a stop is valid. Objective data may be based on "various objective observations, information from police reports, if such are available, and consideration of the modes or patterns of operation of certain kinds of lawbreakers." *Cortez*, 449 U.S. at 418. From objective data, a trained officer draws inferences and makes deductions that lead the officer to a resulting suspicion that the individual is involved in criminal activity. *Gopher*, 631 P.2d at 295 (citing *Cortez*, 449 U.S. at 418). Based on the evidence before this Court, we hold that the Lincoln County Sheriff's Office did not have objective data, as required by *Cortez* and *Gopher*, upon which to form a resulting suspicion that Anderson was involved in a crime.

The State asserts, on appeal, that the informant's tip served as a sufficient basis to justify the stop of Anderson's vehicle. The State relies on the precedent set forth in *Adams v. Williams*

8

(1972), 407 U.S. 143, 92 S. Ct. 1921, 32 L. Ed. 2d 612, and *State v. Sharp* (1985), 217 Mont. 40, 702 P.2d 959--two cases in which an informant's tip served as the initial basis for an investigative stop. We conclude that the facts of both *Adams* and *Sharp* are distinguishable from the facts in the present case and that the informant's tip in the present case did not give rise to a particularized suspicion of criminal activity.

In *Adams*, the police officer was acting on a tip supplied moments earlier by an informant, and the United States Supreme Court held that the informant's tip had sufficient indicia of reliability to justify the officer's stop. *Adams*, 407 U.S. at 147. By contrast, the officer in the present case relied on an informant's tip which included no factual basis to indicate its reliability. The State concedes that it had no information regarding the basis of the informant's knowledge.

In *Sharp*, a citizen informer had just called the police to report a possible DUI offense and the informant provided the police with information to find the vehicle. The police officer corroborated the informant's tip with his own observations at the scene. He noticed the defendant's vehicle stopped halfway in the road, saw attendant skid marks near the car, and observed the vehicle pulling away from him when he arrived. We held that based on the informant's tip and the officer's observations at the scene which corroborated the tip, the officer had a particularized

9

suspicion sufficient to stop the vehicle to investigate a possible crime. *Sharp*, 702 P.2d at 962.

In contrast to *Sharp*, none of the observations made in this case prior to the stop of Anderson's vehicle suggested illegal activity. The only investigation made by the officers prior to the stop involved observation of Anderson as he lawfully drove across the Idaho border into Montana. In *State v. Valley* (1992), 252 Mont. 489, 494, 830 P.2d 1255, 1258, we held a simple drive-by of a house was not probative of the probability of illegal activity within the house. Similarly, a simple observation of a motor vehicle lawfully crossing a state line was not probative of the probability that Anderson was transporting drugs in his vehicle.

Instead of conducting independent investigation to corroborate the tip, the officers relied on the tip to stop the pickup and gather information to justify the stop in the first place. Officer Bernall testified that the very purpose of stopping and searching Anderson's pickup was to investigate whether Anderson was transporting drugs and to confirm that the tip was reliable so that a search warrant could be obtained. To condone a search of the defendant under these circumstances would render the right to be free from unreasonable searches and seizures meaningless.

A tip that has not been shown to be reliable or trustworthy for purposes of establishing probable cause to procure a search warrant is also unreliable for purposes of providing an officer

10

with a particularized suspicion. An uncorroborated, unreliable tip is not objective data as contemplated by *Cortez* and *Gopher*.

We conclude that when the officers in this case stopped Anderson's pickup to investigate and confirm the reliability of their informant's tip, the officers did not have objective data and did not meet the particularized suspicion standard required by *Gopher*. Therefore, the stop was illegal.

The Fourth Amendment protection against unreasonable searches and seizures applies to the seizures of the person, including brief investigatory stops such as the stop of a vehicle. *Cortez*, 449 U.S. at 417. When the Lincoln County Sheriff's officers stopped Anderson in his pickup, they violated Anderson's right to be free from unreasonable searches and seizures as guaranteed by the Fourth Amendment of the United States Constitution and Article II, Section 11, of the Montana Constitution.

We hold that because the initial stop was unlawful, all of the evidence obtained by the officers in this case is inadmissible at trial. *Mapp v. Ohio* (1961), 367 U.S. 643, 81 S. Ct. 1684, 6 L. Ed. 2d 1081.

We reverse and remand this case to the District Court and direct the lower court to suppress and exclude from evidence all items seized as a result of the unlawful stop and search of Anderson's pickup.

_____
                          Justice

11

We concur:

_____
Chief Justice

_John Conway Harrison_____

_Karla M. Gray_____

_William E. Hunt Sr_____


_____

_P.C. McDonough_____
Justices

Justice Fred J. Weber dissents as follows:

I dissent from the conclusion of the majority which holds that when the officers in this case stopped Anderson's vehicle, the officers did not have objective data and did not meet the particularized suspicion standard required by State v. Gopher (1981), 193 Mont. 189, 631 P.2d 293. Police are authorized to stop a vehicle when they have a particularized or reasonable suspicion that criminal activity may be afoot. This is the controlling rule as clearly stated in State v. Sharp (1985), 217 Mont. 40, 702 P.2d 959:

> The defendant alleges that Officer Williams was without authority to stop the defendant's vehicle because he lacked probable cause to do so. This contention is erroneous. All that is required of an officer in making an investigatory stop is that he have a "particularized" or "reasonable" suspicion that criminal activity may be afoot. This is the applicable standard for an investigative stop of a vehicle; or in other words "some basis from which the court can determine that the detention was not arbitrary or harassing." State v. Gopher (Mont. 1981), 631 P.2d 293, 295, 38 St.Rep. 1078, 1081, relying on United States v. Cortez (1981), 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621.

Sharp, 217 Mont. at 45.

As pointed out in the majority opinion, on October 8, 1991, the Lincoln County Sheriff's Department received a tip that defendant and another individual were leaving Libby, Montana, and driving to Washington to retrieve a large quantity of marijuana. That informant told Officer Burnell that defendant and his fellow passenger would be traveling in defendant's blue Toyota pickup and would be returning to Montana in the late night of October 8, 1991. We emphasize that here the police had a particularized suspicion

13

based upon the tip of a previously accurate confidential informant. We have held that information supplied by a previously accurate informant is sufficient to establish the probability of criminal activity. State v. Walston (1989), 236 Mont. 218, 223, 768 P.2d 1387, 1390.

In Sharp this Court concluded that Officer Williams did have sufficient basis for his particularized suspicion, stating:

> Here, Officer Williams had a sufficient basis for his particularized suspicion of illegal activity. A citizen had just called the police to report a possible DUI offense and had given the police dispatcher the car's license plate number and description and the direction of travel. These facts were corroborated when Officer Williams found the described vehicle going in the direction and on the highway reported by the telephone caller. When Williams came upon the automobile, it was stopped halfway off the roadway and began to pull away when he approached. Officer Williams noticed skid marks coming from the vehicle. He had right at that time, based on reasonable suspicion and logical inference, to stop the defendant's vehicle to investigate a possible crime. (Emphasis added.)

Sharp, 217 Mont. at 45-46. In Sharp an anonymous informant had called to report a possible DUI, giving a description of the car's license plate number, automobile description and direction of travel. Sharp concluded those facts were corroborated when the officer found the described vehicle going in the direction and on the highway reported by the caller. In our case, we have directly comparable facts, but facts which are somewhat stronger as a basis for an investigatory stop than in Sharp. Here the initial tip was by the previously accurate confidential informant who advised that the defendant and another individual were going to be driving into Libby, Montana in the late night of October 8, and that they would

14

be traveling in the defendant's blue Toyota pickup. A significant portion of these facts was corroborated when the officers observed the defendant's blue Toyota pickup, whose license number they verified, returning to Montana on the late night of October 8, as described by the informant. These facts are directly comparable to Sharp plus the additional corroboration of a tip by a previously accurate confidential informant.

Following the confirmation of the defendant's vehicle going in the right direction, on the highway, and at the time of day described by the informant, I conclude that the officers had properly obtained sufficient corroboration so they had a particularized and reasonable suspicion that criminal activity may have been afoot, entitling them to make an investigatory stop. The majority refers to Sharp and suggests that this case is to be distinguished because there was nothing to suggest that the defendant's vehicle here suggested illegal activity. I do not find any such indication of illegal activity in Sharp. The majority refers to State v. Valley (1992), 252 Mont. 489, 830 P.2d 1255, for the proposition that a simple "drive by" of the premises is not observation probative of illegal activity. That analysis is not applicable here. The informant in Valley was an anonymous citizen informant, the police did not have a way of knowing whether the information was correct without specific corroboration which was not obtainable in a drive by situation. The present case should be distinguished from Valley because we have the previously accurate confidential informant.

I suggest that police corroboration of the exact make, model and color of car, going in the specified direction at the specified time was enough to constitute a "particularized suspicion" when presented by a previously accurate confidential informant.

I would therefore affirm the District Court.

_____
Justice

Chief Justice J. A. Turnage concurs in the foregoing dissent.

_____
Chief Justice

June 1, 1993

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:


DONALD L. SHAFFER
Attorney at Law
502 Main St.
Libby, MT 59923

HON. MARC RACICOT, Attorney General
John Paulson, Assistant
Justice Bldg.
Helena, MT 59620

SCOTT B. SPENCER
Lincoln County Attorney
512 California Ave.
Libby, MT 59923


ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
        Deputy