NO. 94-368

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

STATE OF MONTANA,

       Plaintiff and Respondent,

   v.

MARTIN DANIEL REYNOLDS,

       Defendant and Appellant.

FILED

JUL 17 1995

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable Larry W. Moran, Judge presiding.


COUNSEL OF RECORD:

      For Appellant:

         Jeannettte Ellen Berry, Berry Law Firm, Bozeman,
Montana

      For Respondent:

         Hon. Joseph P. Mazurek, Attorney General, Elizabeth
L. Griffing, Assistant Attorney General, Helena,
Montana; A. Michael Salvagni, Gallatin County
Attorney, Susan Swimley, Deputy Gallatin County
Attorney, Bozeman, Montana


Submitted on Briefs: May 11, 1995

Decided: July 17, 1995

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

Defendant/Appellant, Martin Reynolds (Reynolds), was charged with a third offense of driving under the influence of alcohol (DUI) on December 22, 1991. After a hearing, the Gallatin County Justice Court denied Reynolds' motion to dismiss, found Reynolds guilty, and stayed sentence pending appeal. Reynolds appealed to district court. The Eighteenth Judicial District Court, Gallatin County, denied Reynolds' motion to dismiss and following trial, found Reynolds guilty and stayed sentence pending appeal. Reynolds appeals from the sentence and judgment of the District Court and from the order denying his motion to dismiss. We reverse.

## ISSUE

Reynolds raises the following issue on appeal: Did Deputy Peterson have a particularized suspicion to justify an investigative stop of Reynolds' vehicle?

## STANDARD OF REVIEW

In this case, the District Court denied Reynolds' motion to dismiss for an improper investigative stop, concluding that the arresting officer had vast experience and that Reynolds committed a traffic violation which gave rise, along with other facts, to the officer's right to stop him. We review the record to determine whether substantial credible evidence supports the legal conclusion implicit in the trial court's denial of defendant's motion, that the arresting officer had a particularized suspicion to justify the investigatory stop, and, if, based on the evidentiary record, the court's legal conclusion was correct. See, for example, State v.

2

Stubbs (1995), 892 P.2d 547, 550, 52 St.Rep. 232, 233 (We review a district court's ruling on a motion to suppress to determine whether there is substantial credible evidence to support the court's findings of fact, and whether the court correctly applied the findings as a matter of law.)

## BACKGROUND

At approximately 9:00 p.m., on December 22, 1991, Deputy Sheriff David Peterson observed a pickup driven by Reynolds, traveling down a dead-end street. Deputy Peterson thought the vehicle was "bordering on traveling too fast" for the conditions (traffic and darkness) and drove to where he thought the vehicle would reappear. When it did not reappear, he moved to see Reynolds make a u-turn in a city park. Deputy Peterson then met Reynolds at an intersection where Reynolds had the right-of-way. After approximately 7 to 10 seconds, Reynolds proceeded through the intersection. Deputy Peterson then pulled Reynolds over to make an investigatory stop. Other facts are referred to in our discussion as necessary.

## DISCUSSION

Reynolds argues that the District Court erred in denying his motion to dismiss and in finding him guilty of driving under the influence of alcohol. Reynolds claims that Deputy Peterson did not have a particularized suspicion to justify an investigatory stop pursuant to § 46-5-401, MCA. In 1991, the Legislature amended § 46-5-401, MCA, to be consistent with United States Supreme Court and Montana case law: Section 46-5-401, MCA, provides:

3

Investigative stop. In order to obtain or verify an account of the person's presence or conduct or to determine whether to arrest the person, a peace officer may stop any person or vehicle that is observed in circumstances that <u>create a particularized suspicion that the person or occupant of the vehicle has committed, is committing, or is about to commit an offense.</u> [Emphasis added].

The Fourth Amendment right against unreasonable searches and seizures, made applicable to the states by the Fourteenth Amendment, "protects people, not places." Terry v. Ohio (1968), 392 U.S. 1, 8-9, 88 S.Ct. 1868, 1873, 20 L.Ed.2d 889, 899 (citing Katz v. United States (1967), 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576, 582). Whenever a police officer restrains a person's freedom, such as in a brief investigatory stop of a vehicle, the officer has seized that person. <u>Terry,</u> 392 U.S. at 16; United States v. Cortez (1981), 449 U.S. 411, 417, 101 S.Ct. 690, 694-95, 66 L.Ed.2d 621, 628.

A police officer may seize an individual based on less than probable cause if the seizure is reasonable under the circumstances. <u>Terry,</u> 392 U.S. at 20. "[I]n justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." <u>Terry,</u> 392 U.S. at 21. The Court refused to sanction intrusions based on "nothing more substantial than inarticulate hunches. . ." <u>Terry,</u> 392 U.S. at 22.

Recognizing that "[a]n investigatory stop must be justified by some objective manifestation that the person stopped is, or is

about to be, engaged **in criminal activity"**, the United States Supreme Court set forth a two-part test to evaluate whether the police have sufficient cause to stop a person. Cortez, 449 u.s. at 417-18. The essence of the test is that the totality of the circumstances must give the police a particularized and objective basis for suspecting the person of criminal activity. Cortez, 449 U.S. at 417-18.

In State v. Gopher (1981), 193 Mont. 189, 631 P.2d 293, we adopted the two-part test enunciated in Cortez, placing the burden on the state to show: "1) objective data from which an experienced officer can make certain inferences; and (2) a resulting suspicion that the occupant of a certain vehicle is or has been engaged in wrongdoing or was a witness to criminal activity." Gopher, 631 P.2d at 296. Applying the rules of Cortez, we held that a particularized suspicion existed to justify stopping a vehicle that slowly drove past the crime scene and exhibited an unusual curiosity in the crime site. Gopher, 631 P.2d at 296.

The issue of whether or not a particularized suspicion exists in order to justify an investigative stop is factually driven. For example, in State v. Morsette (1982), 201 Mont. 233, 654 P.2d 503, a farm was broken into, setting off a silent alarm that alerted the sheriff and a neighbor. The neighbor saw an unfamiliar truck driving very fast and wrote down its license number. Morsette, 654 P.2d at 504. The deputy followed tire tracks from the farm and saw the truck matching the neighbor's description. In applying the two-pronged test, we held that the totality of the facts before the

5

deputy created a particularized suspicion justifying the investigatory stop. Morsette, 654 P.2d at 507.

In Matter of Suspension of Driver's License of Blake (1986), 220 Mont. 27, 712 P.2d 1338, the petitioner exhibited patterns consistent with a person driving while under the influence of alcohol. Blake, 712 P.2d at 1341. The petitioner was driving in the vicinity of several bars at around 2:00 a.m. and swerved into the wrong traffic lane. Therefore, we held that such uncontradicted evidence was sufficient to support a particularized suspicion that the petitioner may have been driving under the influence of alcohol. Blake, 712 P.2d at 1341.

When the totality of the circumstances does support a particularized suspicion, we have held the investigatory stop to be unjustified. For example, in Grinde v. State (1991), 249 Mont. 77, 813 P.2d 473, the sheriff's deputies saw the defendant's car properly execute a right hand turn and drive out of eyesight. After the defendant's car was out of eyesight, the deputies then heard an engine revving and the squeal of tires. Subsequently, they stopped the defendant. Grinde, 813 P.2d at 474. We held that the sheriff's deputies were not justified in stopping the defendant's vehicle because they merely heard the squeal of tires but saw no evidence of erratic driving. Grinde, 813 P.2d at 475.

Similarly, in State v. Anderson (1993), 258 Mont. 510, 853 P.2d 1245, the facts were not sufficient for us to hold that the police officers met the particularized suspicion test. In Anderson, an informant tipped the police that a blue pickup

6

Reynolds had been engaged in wrongdoing.

We hold the investigative stop was not justified pursuant to § 46-5-401, MCA; Deputy Peterson did not have facts supporting a particularized suspicion that Reynolds had committed, was committing, or was about to commit an offense. Because the investigatory stop was unlawful, we reverse the District Court's decision to deny Reynolds' motion to dismiss and we remand with instructions to enter an order of dismissal consistent with this opinion.

_____
Justice

We Concur:

_____
_____
_____
_____
Justices