No. 98-121

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 138N

STATE OF MONTANA,

Plaintiff and Respondent,

v.

RICHARD JAMES ALMANZA,

Defendant and Appellant.

APPEAL FROM: District Court of the Eighth Judicial District,

In and for the County of Cascade,

Honorable Marge Johnson, Judge Presiding.

No

COUNSEL OF RECORD:

For Appellant:

John Keith, Attorney at Law, Great Falls, Montana

For Respondent:

Honorable Joseph P. Mazurek, Attorney General; Carol Schmidt,

Assistant Attorney General, Helena, Montana

David Gliko, City Attorney, Great Falls, Montana

Submitted on Briefs: May 13, 1999

Decided: June 14, 1999

Filed:

No

_____

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

**¶1. Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number, and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.**

**¶2. Richard James Almanza appeals the ruling of the Eighth Judicial District Court, Cascade County, denying his motion to suppress the State's evidence against him on charges of driving under the influence of alcohol, in violation of § 61-8-401, MCA. We affirm the ruling of the District Court.**

## ISSUE

**¶3. Did the District Court err in denying Almanza's motion to suppress the State's evidence on the grounds that the arresting officer lacked a particularized suspicion justifying the stop?**

## BACKGROUND

**¶4. On June 16, 1996, at approximately 2:25 a.m., Officers Paul Smith and Kathy Carson of the Great Falls Police Department both responded to a disturbance call in a quiet residential neighborhood on 19th Street South in Great Falls, Montana. The officers did not have any particular description of the individual purportedly causing the disturbance. Both officers mistakenly turned on 18th Street instead of 19th Street. The officers parked their vehicles on 18th Street and proceeded on foot to locate the source of the disturbance.**

**¶5. Officer Smith first saw Almanza's vehicle as it pulled out of an alley onto 18th**

Street heading south. Officer Carson also noticed Almanza's vehicle traveling south down 18th Street and observed that the vehicle was driving in the middle of the street rather than on the right side of the road. Officer Carson observed that the vehicle was traveling at such an excessively slow speed that she was able to walk alongside the vehicle as it moved.

¶6. Almanza's car windows were open and extremely loud music was being played inside the car. Given the time of day and the volume of the music, Officer Carson believed the driver was causing a disturbance in the neighborhood. She approached the vehicle and requested that the driver turn his radio down. Almanza did not hear Officer Carson's request and continued driving. Officer Carson then yelled for Almanza to turn his radio down. Almanza looked over at Officer Carson, but did not otherwise respond to her and continued driving slowly down 18th Street.

¶7. Officer Carson observed that Almanza's eyes were glazed and concluded that something was wrong with him, so she reached into the vehicle, shifted it into park and turned the vehicle's radio down. While reaching into the vehicle, Officer Carson noticed a lit cigarette burning the seat between Almanza's legs and detected the odor of alcohol on Almanza.

¶8. Officer Carson asked Almanza to step out of the vehicle. Outside the vehicle, both Officer Carson and Officer Smith observed that Almanza was staggering. He appeared to be intoxicated. Almanza refused to produce his driver's license or car registration and would not tell the officers his name. The officers ran a check on the vehicle tags and determined that the vehicle was owned by Almanza.

¶9. Almanza was charged with and convicted of driving under the influence of alcohol, in violation of § 61-8-401, MCA, second offense, in a bench trial before the Great Falls City Court. Almanza appealed his conviction to the Eighth Judicial District Court, Cascade County, and filed a motion to suppress the State's evidence against him on the grounds that the arresting officers had no particularized suspicion justifying the stop of his vehicle. The District Court held a hearing and denied the motion to suppress. Almanza then pled guilty as charged, reserving his right to appeal the District Court's denial of his motion to suppress. This appeal followed.

STANDARD OF REVIEW

¶10. We review a trial court's grant of a motion to suppress evidence to determine whether the court's findings of fact are clearly erroneous and whether those findings were correctly applied as a matter of law. *State v. Roberts* (1997), 284 Mont. 54, 56, 943 P.2d 1249, 1250. Factual findings are clearly erroneous if they are not supported by substantial evidence, the court has misapprehended the effect of the evidence, or our review of the record convinces us that a mistake has been committed. *Interstate Prod. Credit Ass'n v. DeSaye* (1991), 250 Mont. 320, 323, 820 P.2d 1285, 1287.

## DISCUSSION

¶11. The guidelines for executing an investigative stop of a motor vehicle are codified in Montana as follows:

**Investigative stop.** In order to obtain or verify an account of the person's presence or conduct or to determine whether to arrest the person, a peace officer may stop any person or vehicle that is observed in circumstances that create a particularized suspicion that the person or occupant of the vehicle has committed, is committing, or is about to commit an offense.

Section 46-5-401, MCA.

¶12. Whether a particularized suspicion existed at the time of the stop depends upon the totality of the circumstances giving rise to the stop. *State v. Reynolds* (1995), 272 Mont. 46, 49-50, 899 P.2d 540, 542. The totality of the circumstances includes the evidence as evaluated by the officer in light of the officer's knowledge and training. *State v. Gopher* (1981), 193 Mont. 189, 193, 631 P.2d 293, 295.

¶13. Almanza argues that no particularized suspicion justified the investigative stop in this case because the testimony of Officers Carson and Smith was contradictory with regard to their individual observations of the movements of his vehicle. Almanza also contends there was no particularized suspicion because the State failed to demonstrate that the stop of Almanza's vehicle was in any way related to the initial disturbance call for which the officers had been summoned to the area.

¶14. We find these arguments unpersuasive. Although Officers Carson and Smith

testified differently with regard to what they observed of Almanza's vehicle, the testimony of the two officers is not contradictory as Almanza asserts. Officer Smith testified that he first observed Almanza's vehicle as it entered onto 18th Street from an alley, and that he did not observe the vehicle driving in the middle of the road.

¶15. Officer Carson testified that she did not observe the vehicle until it was already driving down 18th Street and that, at that time, the vehicle was traveling down the center of the roadway. The District Court apparently found no inconsistencies between the testimony of the two officers, notwithstanding the fact that their testimony was not wholly identical. It is the exclusive province of the trier of fact to determine the weight and credibility of the evidence before it, and such a determination will not be disturbed on appeal. *State v. Collard* (1997), 286 Mont. 185, 193, 951 P.2d 56, 61.

¶16. We likewise reject Almanza's contention that the stop was unjustified because it was not related to the initial disturbance call. It is wholly irrelevant why the officers were in that neighborhood at that particular time, so long as there was sufficient objective data available to the officers to form a particularized suspicion that Almanza was committing an offense.

¶17. Officer Carson testified that the music from Almanza's vehicle was loud enough to constitute a disturbance given the hour and the neighborhood. For this reason, she approached the vehicle and asked the driver to turn down his radio. Even after the driver noticed the officer, he continued driving forward, and Officer Carson could tell that his eyes appeared glazed. From this she determined that something was wrong and initiated the stop by reaching into the vehicle and placing it in park.

¶18. We conclude that the stop of Almanza's vehicle was justified under § 46-5-401, MCA, because the music blaring from the vehicle in a quiet residential neighborhood at 2:30 a.m. constituted a disturbance justifying an investigative stop. Additionally, Officer Carson's observation that the vehicle was driving in the middle of the road at an excessively slow rate of speed, that the driver of the vehicle was unresponsive, and that his eyes appeared glazed were sufficient for the formation of a particularized suspicion that Almanza was driving under the influence of alcohol.

¶19. For the foregoing reasons, we hold that the District Court did not err in denying Almanza's motion to suppress. Affirmed.

/S/ J. A. TURNAGE

We concur:

/S/ KARLA M. GRAY

/S/ WILLIAM E. HUNT, SR.

/S/ W. WILLIAM LEAPHART

/S/ TERRY N. TRIEWEILER