No. 02-520

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 127

STATE OF MONTANA,

        Plaintiff and Respondent,

    v.

MATTHEW DEAN EIXENBERGER,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DC 00-254C,
Honorable Stewart E. Stadler, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            Mark R. Sullivan, Attorney at Law, Kalispell, Montana
            Great Falls, Montana

        For Respondent:

            Honorable Mike McGrath, Attorney General; Jennifer Anders, Assistant
            Attorney General; Ryan M. Archer, Legal Intern, Helena, Montana

            Edward J. Corrigan, County Attorney, Kalispell, Montana

Submitted on Briefs:  May 29, 2003

Decided:  May 18, 2004

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1      Matthew Dean Eixenberger (Eixenberger) was charged with two felony counts of burglary in violation of § 45-6-204, MCA, in the Eleventh Judicial District, Flathead County. Eixenberger moved to suppress evidence gained from an investigative stop, but the District Court denied the motion.  Eixenberger then entered an Alford plea to Count I of the information and reserved his right to appeal the District Court's denial of his motion to suppress.  Eixenberger now appeals, and we affirm in part and reverse in part.

¶2      We restate the issues on appeal as follows:

¶3      1. Did the District Court err in denying the defendant's motion to suppress?

¶4      2. Did the District Court err in imposing the restitution condition portion of Eixenberger's sentence?

## FACTUAL AND PROCEDURAL BACKGROUND

¶5      Beginning in July 2000, several casinos were burglarized in the City of Kalispell and surrounding areas.  All of the burglaries had similar characteristics.  The glass front door of each casino had been broken with small round river rocks, creating an opening through which the burglar would then enter the casino.  After entering the premises, the burglar would pry open the cash boxes of the keno machines with the flat tip of a pry tool, large screwdriver, or a tire iron, and exit with the cash.  In almost every case, all of this was accomplished in under a minute.

¶6      Detective Greg Burns (Burns) of the Kalispell Police Department (KPD or department) was assigned to investigate the case.  Burns had been an officer with the

2

department for twenty-four years, and a detective with special investigative training for three to four years. While investigating the burglaries, Burns was contacted by Eixenberger's former parole officer, Paul Berg (Berg). After learning of the casino burglaries, Berg decided to notify Burns that Eixenberger was in the area and had been previously convicted of two casino burglaries. Burns himself was familiar with Eixenberger because Eixenberger had been a suspect in another Kalispell burglary in 1997.

¶7 Burns investigated Eixenberger and discovered that Eixenberger had recently been issued two traffic tickets while driving a red Ford Thunderbird, which was registered to an Adrian Hertz (Hertz). In addition, he learned that Eixenberger and Hertz were good friends; that they had been involved in various thefts as youths; and that they were probably living together in Kalispell. After this initial investigation of Eixenberger, officers from the KPD began monitoring Eixenberger, along with seven or eight other suspects, during late night and early morning patrol surveillance.

¶8 Shortly after the KPD began monitoring Eixenberger, Patrolman Sean McRae (McRae), while patrolling the casinos early one morning, identified the Thunderbird and license plate from a list of potential suspect vehicles at about 2:00 a.m. and followed it until about 2:10 a.m. McRae ceased trailing the Thunderbird about two hundred yards from the Montana Grille. At 2:19 a.m., the Montana Grille Casino was burglarized. Due to the similarity between the Montana Grille burglary and other prior burglaries, and the fact that the Thunderbird was sighted in the vicinity shortly before the Montana Grille was burglarized, Eixenberger became a prime suspect.

3

¶9    The police increased their early morning patrols of the casinos and their surveillance of the Thunderbird and Eixenberger.  The Thunderbird was spotted cruising the valley several times, with either Eixenberger or Hertz driving, between two and six o'clock in the morning, the time period in which the burglaries had occurred.  Based on this evidence, Burns applied for a search warrant, which was issued by Judge Ortley, enabling a tracking device to be placed on the Thunderbird.  However, at approximately 4:00 a.m. on September 14, 2000, before the device was installed, the Best Bet Casino was burglarized.

¶10    Burns was immediately awakened and notified of the Best Bet Casino burglary.  He alerted the KPD and the Flathead County Sheriff's Department to patrol other casinos and to watch particularly for the Thunderbird.  KPD Patrol Officer Jim Wardinsky (Wardinsky) was dispatched to the Hertz residence to ascertain whether Eixenberger or the Thunderbird were there.  Wardinsky discovered that neither Eixenberger nor the Thunderbird were present at the Hertz residence.  In addition, Flathead County Deputy Sheriff Art Nelson (Nelson) was dispatched to Los Caporales in Evergreen, which had suffered a similar break-in, to conduct surveillance.

¶11    Approximately an hour after the Best Bet Casino was burglarized, the Gold Bar Casino was burglarized. Wardinsky responded to the break-in and found that it was similar to the break-in at the Best Bet Casino, but that the interior door had not been breached and that no money had been taken.  Meanwhile, as Nelson was patrolling the Evergreen area, he encountered the Thunderbird and stopped it.  The stop occurred within minutes of the Gold Bar burglary and within a quarter-mile from the Gold Bar.  Nelson testified that he stopped

4

the Thunderbird because it was the precise car he was looking for at the request of the KPD. Nelson called in the stop and Burns was notified. When Burns arrived at the scene of the stop, he identified two people in the car. Eixenberger was the driver and an unknown person, who gave his name as Eric but was later determined to be Aaron Diaz, was in the passenger seat. Burns also observed, in the front passenger area of the car, six round river rocks and two screwdrivers. Burns further noted that Eixenberger's clothing matched the clothing description which KPD Sergeant Brian Fulford (Fulford) had radioed to Burns after Fulford had viewed the surveillance tapes from the Best Bet Casino burglary earlier that night.

¶12 Eixenberger consented to a search of the vehicle and officers recovered a screwdriver with paint on it, glass fragments, and a tire iron. The officers arrested Eixenberger, and he was charged with two felony counts of burglary in violation of § 45-6-204, MCA. He was arraigned and pled not guilty to both counts. The State filed a notice of intent to seek persistent felony offender designation. Eixenberger filed a motion to suppress evidence from the stop, alleging that the stop was illegal. The District Court denied his motion. The State then filed a Just notice concerning Eixenberger's previous crimes, to which Eixenberger objected by filing a motion in limine to exclude the evidence. The District Court granted his motion in limine. In March of 2002, Eixenberger entered an Alford plea to Count I of the information, reserving his right to appeal the District Court's denial of his motion to suppress. The State dismissed Count II and withdrew the persistent felony offender notice. In May, the District Court sentenced Eixenberger to twenty years at Montana State Prison

5

with eight years suspended, and ordered restitution in a sum to be determined. Eixenberger appeals from the denial of his motion to suppress.

## STANDARD OF REVIEW

¶13 We will not "overturn a District Court's findings of fact regarding suppression hearing evidence unless those findings are clearly erroneous." *State v. Hermes* (1995), 273 Mont. 446, 449, 904 P.2d 587, 589. Findings of fact are clearly erroneous "if they are not supported by substantial evidence, the court has misapprehended the effect of the evidence, or our review of the record convinces us that a mistake has been committed." *State v. Lacasella*, 2002 MT 326, ¶ 10, 313 Mont. 185, ¶ 10, 60 P.3d 975, ¶ 10.

## DISCUSSION

### ISSUE ONE

¶14 *Did the District Court err in denying the defendant's motion to suppress?*

¶15 Although Eixenberger argues that the stop was unlawful because there was insufficient probable cause, his authorities and argument indicate he is actually asserting the lack of particularized suspicion for the investigative stop made by the officers. Eixenberger analogizes his situation with that in *State v. Lafferty*, 1998 MT 247, 291 Mont. 157, 967 P.2d 363, where an officer stopped the defendant based on an anonymous informant's tip that the defendant was drunk but the officer did not observe any illegal driving or any indication of impairment to corroborate the informant's tip before stopping the defendant. *Lafferty*, ¶ 4. Eixenberger maintains that the officer who stopped him needed to observe illegal driving or some indication of impairment before Eixenberger could be stopped. However, we disagree.

6

*Lafferty* addressed the necessary police corroboration of an anonymous informant's tip. *Lafferty*, ¶ 12. Here, the issue is whether the police had the requisite particularized suspicion from their own investigation to initiate an investigative stop of the Thunderbird Eixenberger was driving.

¶16 "[W]arrantless searches are per se unreasonable, subject to a few carefully drawn exceptions. One of those exceptions is the investigatory stop." *State v. Tackitt*, 2003 MT 81, ¶ 24, 315 Mont. 59, ¶ 24, 69 P.3d 295, ¶ 24 (citation omitted). Under § 46-5-401, MCA, "a peace officer may stop any person or vehicle that is observed in circumstances that create a particularized suspicion that the person or occupant of the vehicle has committed, is committing, or is about to commit an offense." To determine whether an officer had the requisite "particularized suspicion," we utilize a two-part test. *Anderson v. State Dept. of Justice* (1996), 275 Mont. 259, 263, 912 P.2d 212, 214; *State v. Gopher* (1981), 193 Mont. 189, 192, 631 P.2d 293, 295. There must have been "(1) objective data from which an experienced officer can make certain inferences; and (2) a resulting suspicion that the occupant of a certain vehicle is or has been engaged in wrongdoing." *State v. Fisher*, 2002 MT 335, ¶ 12, 313 Mont. 274, ¶ 12, 60 P.3d 1004, ¶ 12 (citing *Gopher*, 193 Mont. at 194, 631 P.2d at 296). Whether particularized suspicion exists to justify an investigative stop is a question of fact which depends on the totality of the circumstances. *State v. Reynolds* (1995), 272 Mont. 46, 49, 899 P.2d 540, 542.

¶17 We have noted that "objective data may be based on 'various objective observations, information from police reports, if such are available, and consideration of the modes or

7

patterns of operation of certain kinds of lawbreakers.'" *State v. Anderson* (1993), 258 Mont. 510, 514, 853 P.2d 1245, 1248 (quoting *United States v. Cortez* (1981), 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621, 629). Though Eixenberger maintains that the only reason he was stopped was because of his previous burglary convictions, the record reveals other factors which led to the stop.

¶18   First, police conducted a background investigation of Eixenberger which prompted police to add him to a list of potential suspects. The background investigation revealed that Eixenberger had been issued two traffic citations while driving a red Ford Thunderbird, which was registered to Hertz; that Eixenberger and Hertz were good friends; that they had been involved in various thefts as youths; and that they were possibly living together in Kalispell.

¶19   Eixenberger become a primary suspect after the Montana Grille Casino was burglarized and the Thunderbird was seen about two hundred yards away from the Montana Grille some nine minutes before the burglary occurred. Subsequently, the Thunderbird was spotted several times, with either Eixenberger or Hertz driving, between two and six o'clock in the morning. During the early morning hours of September 14, 2000, following the burglary at the Best Bet Casino, police checked the Hertz residence, finding that neither Eixenberger nor the Thunderbird were there. About an hour later, the Gold Bar Casino was burglarized, and Eixenberger was stopped in the Thunderbird within minutes of that burglary and about a quarter-mile from the Gold Bar.

¶20 We conclude that sufficient objective data existed to support a police suspicion that Eixenberger was engaged in wrongdoing, or had engaged in wrongdoing, and that the investigative stop of Eixenberger's vehicle was appropriate. Therefore, the District Court did not err in denying Eixenberger's motion to suppress.

## ISSUE TWO

¶21 *Did the District Court err in imposing the restitution condition of the sentence?*

¶22 Eixenberger challenges the amount the District Court awarded in restitution. The District Court held that Eixenberger "must pay restitution in a sum to be determined, with interest accruing at the legal rate of 10% per annum, for losses and damages sustained by Best Bet Casino . . . and Gold Bar Casino . . . ." (Underlining in original.) The State concedes that the District Court did not follow the statutory guidelines for imposing restitution. Section 46-18-244(1), MCA, reads that "[t]he court shall specify the total amount of restitution that the offender shall pay." The District Court did not specify the total amount of restitution, instead it held that Eixenberger would pay restitution "in a sum to be determined." We have held that district courts must comply with § 46-18-244, MCA, and, here, the District Court did not comply. *See State v. Flanagan*, 2003 MT 123, ¶ 35, 316 Mont. 1, ¶ 35, 68 P.3d 796, ¶ 35. *State v. Pritchett*, 2000 MT 261, 302 Mont. 1, 11 P.3d 539; *State v. Brown* (1994), 263 Mont. 223, 867 P.2d 1098. Further, the State also notes that the presentence investigation report failed to document the victim's pecuniary loss and Eixenberger's financial resources and ability to pay, as required by § 46-18-242, MCA

(1999).  Therefore, we reverse and remand this matter for further sentencing proceedings

consistent herewith.

¶23    Affirmed in part, reversed in part and remanded.


                                                    /S/ JIM RICE



We concur:

/S/ KARLA M. GRAY
/S/ JIM REGNIER
/S/ JOHN WARNER
/S/ PATRICIA O. COTTER