JUSTICE LEAPHART,
dissenting.
¶30 I dissent as to issue one and would not reach issue two.
¶31 I disagree with the Court’s conclusion that Officer Romero had a particularized suspicion to stop Hilgendorf s vehicle. The officer saw Hilgendorf s vehicle at 2 a.m. legally parked on South 23rd Street with its engine running and lights on. Because businesses in this area had *420 experienced a high rate of theft and burglary, Officer Romero drove past the vehicle and circled around a second time. Upon the officer’s second approach, Hilgendorf pulled out and drove away. Officer Romero noted that, as they pulled away, the occupants were moving around as if they were trying to conceal something. Based upon this scant information, the officer initiated a stop.
¶32 The gravamen of particularized suspicion is missing. That is, the totality of the circumstances confronting Officer Romero at the time of the stop did not create an objective basis for suspecting criminal activity. State v. Van Kirk, 2001 MT 184, ¶ 15, 306 Mont. 215, 32 P.3d 735. The facts of the present case are no more compelling than those in State v. Reynolds, 272 Mont. 46, 899 P.2d 540 (1995), where the officer observed the defendant driving “bordering on traveling too fast” and waiting at an intersection for seven to ten seconds. The officer in Reynolds conceded that “the presence of a police car ... could have an unnerving effect on a driver’s normal driving routine.” Reynolds, 272 Mont. at 56, 899 P.2d at 543. On appeal, we concluded that, “under the totality of the circumstances and facts in this case, the possible traffic violation combined with no other objective data does not support a particularized suspicion that Reynolds had been engaged in wrongdoing.” Reynolds, 272 Mont. at 56, 899 P.2d at 543. As in Reynolds, Hilgendorf became unnerved at the officer’s presence and drove away quickly. Unlike Reynolds, he did not commit or “border” on committing any traffic offense.
¶33 Our decision in State v. Jarman, 1998 MT 277, 291 Mont. 391, 967 P.2d 1099 is also instructive. In Jarman, Officer Korell was responding to a domestic disturbance call at approximately 3 a.m. As he drove, he observed an individual later identified as Jarman standing beside a car at an outside pay telephone. No one else was in the area. The officer drove around the block and back to the phone. By that time Jarman and his car were no longer there. The phone was off the hook. Continuing to patrol the area, the officer observed Jarman’s car leaving a parking lot. The officer initiated a traffic stop during which he discovered a knife, illegal drugs, and a gun. The district court denied Jarman’s motion to suppress for lack of particularized suspicion. On appeal, we reversed and noted first that, “[b]eing in a high crime area by itself does not give the police a particularized suspicion to stop a person.” Jarman, ¶ 14. The justifications offered for the stop were that Jarman was talking on a pay phone on a cold night in a high crime area and that after Officer Korell drove around the block, Jarman was gone and the telephone receiver was hanging down *421 off the hook. We concluded the following:
These facts do not rise to the level of a reasonable and articulable suspicion that Jarman was, had been, or was about to engage in criminal activity. Without any connection to the domestic disturbance or reasonable suspicion of evasion, Officer Korell had no reason to stop Jarman. We hold that the District Court’s conclusion that Officer Korell had a particularized suspicion was erroneous.
Jarman, ¶ 15 (emphasis omitted).
¶34 Like Jarman, Hilgendorf was in a high crime area late at night. That fact combined with a quick departure when the officer circled around the block did not, however, give rise to a particularized suspicion. It is noteworthy that we found no particularized suspicion in Jarman even though the officer was patrolling in the context of a reported crime (domestic abuse). Here, the situation was even less “particularized” since Officer Romero was not responding to any specific crime report.
¶35 Officer Romero may have had a general suspicion of criminal activity, but there was certainly nothing “particularized” about his concerns.
JUSTICE NELSON joins the dissenting opinion of JUSTICE LEAPHART.