No. 97-631

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 233

STATE OF MONTANA,

Plaintiff and Appellant,

v.

AARON T. HENDERSON,

Defendant and Respondent.

APPEAL FROM: District Court of the Thirteenth Judicial District,

In and for the County of Yellowstone,

Honorable Maurice R. Colberg, Jr., Judge Presiding.

COUNSEL OF RECORD:

For Appellant:

Honorable Joseph P. Mazurek, Attorney General;

Patricia J. Jordan, Assistant Attorney General, Helena, Montana

Dennis Paxinos, County Attorney; Melanie Logan, Deputy County

Attorney, Billings, Montana

For Respondent:

William F. Hooks, Appellate Defender, Helena, Montana

Submitted on Briefs: August 13, 1998

Decided: September 18, 1998

Filed:

_____

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

¶ **The Thirteenth Judicial District Court, Yellowstone County, granted a motion suppressing all of the evidence in the State's case against Aaron T. Henderson for two felony counts of criminal possession of dangerous drugs, a misdemeanor count of possession of alcohol by a minor and a misdemeanor count of DUI. The State of Montana appeals. We reverse the decision of the District Court.**

## ISSUES

¶ **1. Did the District Court err in suppressing the State's evidence on the grounds that the arresting officer lacked a particularized suspicion to stop Henderson's motor vehicle?**

¶ **2. Did the District Court err in suppressing the State's evidence on the grounds that the arresting officer exceeded the permissible scope of the investigatory stop?**

# BACKGROUND

¶ On May 3, 1997, at approximately 7:40 p.m., Laurel City Police Officer Mike Guy (Officer Guy) observed Henderson driving a motor vehicle displaying neither a front nor rear license plate. Officer Guy turned to follow Henderson and observed what appeared to be a twenty or sixty-day temporary tag located in the rear window. Due to the darkness of the vehicle's tinted windows, however, Officer Guy was unable to determine whether the paper in the window was in fact a valid temporary tag.

¶ Officer Guy activated the overhead lights on his squad car to signal Henderson to pull over. When Henderson failed to respond to the overhead lights, Officer Guy activated his air horn. Henderson again failed to respond to the officer's signal, and Officer Guy activated his air horn a second time. Approximately two and one-half blocks from where the officer first signaled him, Henderson finally pulled his vehicle into a driveway and stopped. Henderson's delay in responding to Officer Guy's direction to pull over raised a suspicion in the officer that the driver might be impaired.

¶ Once the vehicle was stopped, Officer Guy observed one of the passengers attempting to exit the vehicle, which further raised his suspicions. Also, because of the dark tinting on the windows, he could not determine how many persons were in the vehicle, where their hands were, or whether there were any weapons inside the vehicle. Officer Guy grew concerned about his safety at this point and instructed Henderson and his passengers to remain inside the vehicle as he approached.

¶ Officer Guy did not immediately verify the validity of the rear window sticker, but instead went up to Henderson's window, identified himself, informed Henderson of the purpose of the stop, and asked to see Henderson's driver's license, proof of insurance and registration. During this exchange, Officer Guy became aware of a strong smell of alcohol emanating from the vehicle. The officer further observed that Henderson's speech was slurred and thick. Based on these observations, Officer Guy requested that Henderson perform a series of field sobriety tests and a breath test. When Henderson failed two out of three of the field sobriety tests and registered a .104 blood alcohol concentration on the breath test, he was arrested for driving under the influence of alcohol. While performing a search of the vehicle incident to arrest, Officer Guy found alcohol, marijuana and LSD in the passenger compartment.

¶ Following the arrest, Officer Guy made an inspection of the temporary sticker located in the rear window of the vehicle. Although it was still daylight, it was necessary for Officer Guy to employ a flashlight in order to read the sticker through the tinting on the window. Officer Guy's inspection revealed that the sticker was indeed a valid temporary vehicle purchase tag.

## STANDARD OF REVIEW

¶ Our standard of review of a trial court's grant of a motion to suppress is whether the court's findings of fact are clearly erroneous and whether those findings were correctly applied as a matter of law. *State v. Roberts* (1997), 284 Mont. 54, 56, 943 P.2d 1249, 1250*; State v. Lee* (1997), 282 Mont. 391, 393, 938 P.2d 637, 639. A court's findings are clearly erroneous if they are not supported by substantial evidence, the court has misapprehended the effect of the evidence, or our review of the record convinces us that a mistake has been committed. *Interstate Prod. Credit Ass'n v. DeSaye* (1981), 250 Mont. 320, 323, 820 P.2d 1285, 1287.

-

## FIRST ISSUE

¶ Did the District Court err in suppressing the State's evidence on the grounds that the arresting officer lacked a particularized suspicion to stop Henderson's motor vehicle?

¶ The Fourth Amendment's protection against unreasonable searches and seizures applies to situations in which a law enforcement officer performs an investigatory stop of a vehicle. *Reid v. Georgia* (1980), 448 U.S. 438, 440, 100 S.Ct. 2752, 2753, 65 L. Ed.2d 890; *Lee*, 282 Mont. at 394, 938 P.2d at 639. However, there is an exception to the general warrant requirement of the Fourth Amendment which allows a law enforcement officer to briefly detain and question an individual without probable cause if the officer suspects the individual has committed or is in the process of committing an offense. *Terry v. Ohio* (1986), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. This exception has been recognized in Montana and is codified at § 46-5-401, MCA, which reads:

> **Investigative stop.** In order to obtain or verify an account of the

person's presence or conduct or to determine whether to arrest the person, a peace officer may stop any person or vehicle that is observed in circumstances that create a particularized suspicion that the person or occupant of the vehicle has committed, is committing, or is about to commit an offense.

¶ A determination as to whether the "particularized suspicion" requirement of the statute has been satisfied must be made in light of the totality of the circumstances giving rise to the stop. *State v. Gopher* (1981), 193 Mont. 189, 631 P.2d 293. The totality of the circumstances includes the evidence as evaluated by the officer in light of the officer's knowledge and training. *Gopher*, 193 Mont. at 193, 631 P.2d at 295. A particularized suspicion does not require that the law enforcement officer be certain that an offense has been committed. *State v. Morsette* (1982), 201 Mont. 233, 240, 654 P.2d 503, 507.

¶ Our review of the record convinces us that the stop of Henderson's vehicle by Officer Guy was a proper investigatory stop under § 46-5-401, MCA. Section 61-3-301, MCA, requires that all vehicles operated on the public highways of Montana be properly registered with the state and have the proper number of license plates conspicuously displayed on the front and rear ends of the vehicle. Section 61-3-317, MCA, provides a twenty-day grace period in which to register a recently transferred vehicle, during which time the owner may operate the vehicle on the state's streets and highways provided that at all times during that period a temporary vehicle purchase sticker is clearly displayed in the vehicle's rear window. Failure to comply with either of these provisions constitutes a misdemeanor under § 61-3-601, MCA, and the law enforcement officers of the State of Montana are charged with the mandatory duty of enforcing these provisions. Section 61-3-602, MCA.

¶ We decline to address at this time the issue of whether the placement of Henderson's temporary vehicle purchase sticker violated § 61-3-317, MCA, because the vehicle's darkly tinted window prevented the sticker from being "clearly displayed." We do conclude, however, that the inability of the officer to plainly view the sticker as a result of the tinted window was sufficient to give rise to a particular suspicion that the vehicle was not properly registered in violation of § 61-3-301, MCA. There is substantial evidence in the record that Officer Guy was unable to

verify the validity of the sticker because the writing on the paper and the identifying pink stripe generally found on a temporary tag were not discernible from a distance through the darkened window. Indeed, the officer was unable to read the form even close up without the aid of artificial illumination. There is also substantial evidence in the record that the inability to identify the tag gave rise to a particular suspicion in Officer Guy as to the proper registration of the vehicle.

¶ The evidence also demonstrates that Henderson's unusual behavior in failing to promptly respond to the officer's signal to pull over raised some suspicion in the officer's mind as to whether the driver of the vehicle was impaired. This suspicion was further bolstered by the attempt of one of the passengers to exit the vehicle immediately upon stopping and the fact that the officer could not see into the vehicle. The scope of the officer's suspicion was reasonably broadened at that point to include a particularized suspicion that the driver of the vehicle may be impaired.

¶ From this we conclude that in finding that the stop of Henderson's vehicle was pretextual and that Officer Guy had no reasonable grounds to suspect that an offense was being committed, the District Court misapprehended the effect of the evidence before it. As such, the findings of the District Court regarding the legitimacy of Officer Guy's investigatory stop of Henderson's vehicle are clearly erroneous, and we hold that the State's evidence should not be suppressed on those grounds.

-

## SECOND ISSUE

¶ Did the District Court err in suppressing the State's evidence on the grounds that the arresting officer exceeded the permissible scope of the investigatory stop?

¶ In determining that Officer Guy exceeded the scope of his investigation by requesting to see the driver's license, proof of insurance and registration before inspecting what turned out to be a valid temporary tag, the District Court relied on the reasoning set forth in *State v. Farley* (Or. 1989), 775 P.2d 835, and *People v. Redinger* (Colo. 1995), 906 P.2d 81. These cases stand for the principle that where an officer stops a vehicle to verify a temporary sticker and has determined that the sticker is valid, the officer may not thereafter request to see the driver's license or proof of insurance, because the original purpose of the stop was satisfied upon

verification of the temporary tag. The provisions of § 46-5-402(4), MCA, make the District Court's reliance on *Farley* and *Redinger* misplaced. Section 46-5-402(4), MCA, reads:

> A peace officer who has lawfully stopped a person under 46-5-401 or this section . . . shall inform the person, as promptly as possible under the circumstances and in any case before questioning the person, that the officer is a peace officer, that the stop is not an arrest but rather a temporary detention for an investigation, and that upon completion of the investigation, the person will be released if not arrested.

¶ In approaching Henderson's car window, Officer Guy did three things: he identified himself; he informed Henderson of the purpose of the stop; and he asked to see Henderson's driver's license, proof of insurance and registration. The District Court's conclusions focus on whether or not Officer Guy was acting properly in requesting to see Henderson's driver's license before checking the temporary tag. That determination, however, is not a central issue in this case because § 46-5-402(4), MCA, expressly required Officer Guy to identify himself and communicate to the driver the reason for the stop. It was while standing in front of Henderson's window that Officer Guy noted the strong smell of alcohol emanating from the vehicle and the slurred nature of Henderson's speech. These observations are what inevitably led to the administration of the field sobriety and breath tests, which led to the DUI arrest, which led to the search of the vehicle, which revealed the presence of the alcohol, marijuana and LSD.

¶ The root of the evidentiary tree, then, is the fact that Officer Guy was standing where he could detect signs of possible inebriation. Section 46-5-402(4), MCA, in effect made it proper for Officer Guy to be there, and whether he should have asked to see Henderson's driver's license is irrelevant because the request itself was not the source of the evidence Henderson is seeking to suppress.

¶ The timing of the request is likewise immaterial. Section 46-5-402(4), MCA, requires that the officer identify himself and explain the nature of the stop as promptly as possible under the circumstances. Under the facts of this case, it was reasonable for Officer Guy to approach Henderson before stopping to peer into the

rear window of the vehicle, because at that point he had reason to be concerned for his own safety. However, even if he had inspected the temporary tag before approaching Henderson, as the District Court would require, there would have been no alteration in the resulting stream of events, because the officer would still subsequently have had to approach Henderson to identify himself and the purpose of the stop, and in doing so would have been in a position to detect the smell of alcohol and observe Henderson's slurred speech.

¶ From the moment that the officer noted the smell of alcohol and the driver's slurred speech, the initial investigative stop took on the quality of an escalating situation in which the additional information gave rise to further suspicions and enlarged the scope of the investigation to that of a possible DUI. *See State v. Hulse*, 1998 MT 108, 55 St.Rep. 415.

Therefore, we hold that the District Court erred in suppressing the evidence in this case on the grounds that the arresting officer exceeded the scope of his investigation.

¶ **Reversed.**

/S/ J. A. TURNAGE

We concur:

/S/ JAMES C. NELSON

/S/ JIM REGNIER

/S/ TERRY N. TRIEWEILER

No

Justice William E. Hunt, Sr. dissents.

¶24 The majority is correct in setting forth the standard of review of a trial court's granting of a motion to suppress but incorrect in its application. The standard is whether the court's findings of fact are clearly erroneous and whether these findings were correctly applied as a matter of law. The record shows that the findings of fact by the court are not clearly erroneous. It follows that the law was correctly applied, and the court's order suppressing the State's evidence on the ground the arresting officer lacked a particularized suspicion to stop the respondent's vehicle should be affirmed.

¶25 The respondent in this case was driving his vehicle in a perfectly legal manner and was not in violation of any of the laws of Montana. The arresting officer was unable to determine whether the vehicle was properly licensed and therefore made an investigatory stop. His duty at that point was to determine if the car was properly licensed.

¶26 The majority points out that a particularized suspicion does not require that the law enforcement officer be certain that an offense has been committed (citing State v. Morsette (1982), 201 Mont. 233, 240, 654 P.2d 503, 507). The difference is that a particularized suspicion did not exist in this case. Had the officer who made the investigatory stop completed his investigation when he was required to do so, he would have found that the vehicle was not in violation of any licensing requirement of the State of Montana and upon that finding should have known that there was no further reason for the stop.

¶27 The majority rejects the District Court's reliance upon State v. Farley (Or. 1989), 775 P.2d 835, and People v. Redinger (Colo. 1995), 906 P.2d 81, on the grounds that § 46-5-402(4), MCA, make the District Court's reliance on those cases misplaced. I disagree.

¶28 The District Court relied on Redinger. There, the Colorado Supreme Court affirmed a suppression order on an almost identical set of facts. An officer saw a vehicle traveling on the highway but did not see either a license plate or a temporary sticker in the rear of the vehicle. The officer determined the driver of the vehicle was in violation of the state's motor vehicle laws and pulled the car over. As he walked toward the car he observed a

valid temporary registration plate properly displayed in the rear window but he continued on and approached the driver and asked him to produce a license, registration and proof of insurance. As this occurred the officer observed a clear bag containing a powdery substance and the driver was eventually charged with possession of a controlled substance. The trial court held that when the officer realized his initial observation was erroneous, the purpose for the investigatory stop was satisfied and he no longer had any reason to detain and interrogate the driver. The Colorado Supreme Court agreed. Redinger, 906 P.2d. at 82.

¶29 The District Court also relied upon the Oregon case of Farley. The Oregon statute allowed a police officer to stop and detain a person for a suspected traffic infraction, for the purposes of investigation reasonably related to the traffic infraction, identification, and issuance of citation. The officer stopped a vehicle which had no visible license plates. As the officer walked toward the car he saw a valid temporary vehicle permit on the window, making it permissible to operate the car without plates. The officer proceeded to ask the driver for a license, and then checked the license on a computer and cited the driver for driving while his license was suspended and driving without proof of insurance. The Oregon Supreme Court held that the officer had no authority to proceed with the traffic stop after he saw the temporary permit because his authority under the statute ended when he learned there had been no traffic infraction. Farley, 775 P.2d at 836.

¶30 The majority mistakenly claims that the officer in this case was in compliance with the Montana statute, § 45-5-401, MCA, because he did three things: he identified himself; he informed Henderson of the purpose of the stop; and he asked to see Henderson's driver's license, proof of insurance and registration. That is a misinterpretation of the statute because that statute requires that "a peace officer may stop a person or vehicle that is observed in circumstances that create a particularized suspicion that the person or occupant of the vehicle has committed, is committing, or is about to commit an offense." No facts in this case support a particularized suspicion sufficient to make a stop.

¶31 I would affirm the District Court.

/S/ WILLIAM E. HUNT, SR.