No. 03-211

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 310

STATE OF MONTANA,

   Plaintiff and Respondent,

 v.

JONATHAN CARL NELSON,

   Defendant and Appellant.

APPEAL FROM:  District Court of the Twelfth Judicial District,
        In and For the County of Hill, Cause No. DC-2002-078,
        Honorable John Warner, Presiding Judge

COUNSEL OF RECORD:

   For Appellant:

      Jeremy S. Yellin, Attorney at Law, Havre, Montana

   For Respondent:

      Honorable Mike McGrath, Attorney General; Jim Wheelis,
      Assistant Attorney General, Helena, Montana

      David G. Rice, County Attorney, Havre, Montana

           Submitted on Briefs: September 4, 2003

              Decided:  November 9, 2004

Filed:

               Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1     Jonathan Carl Nelson (Nelson) appeals from the judgment entered in the Twelfth Judicial District Court, Hill County, finding him guilty of possession of dangerous drugs, a felony, in violation of § 45-9-102, MCA, and criminal possession of drug paraphernalia, a misdemeanor, in violation of § 45-10-103, MCA, challenging the District Court's denial of his suppression motion. We affirm.

¶2     We rephrase the issue on appeal as follows:

¶3     Did the District Court err in denying Nelson's motion to suppress evidence?

### FACTUAL AND PROCEDURAL BACKGROUND

¶4     On May 26, 2002, Hill County Deputy Sheriff Cory D. Matkin (Deputy Matkin) and Reserve Deputy Sheriff Tim Herron were covering the "graveyard shift." At approximately 12:40 a.m., Deputy Matkin observed two vehicles parked next to each other in the IGA grocery store (IGA) parking lot, including a white Chevy truck, which belonged to Becky Hillard (Hillard). Believing Hillard was a minor and violating the city's curfew law, Deputy Matkin decided to investigate. Deputy Matkin then observed the defendant, later identified as Nelson, exiting the IGA with two 18-packs of beer. Deputy Matkin also noted Nelson had a male passenger waiting in his vehicle. Shortly, both men began conversing with Hillard and her passenger. As Deputy Matkin circled the two parked cars, Nelson abruptly proceeded to his vehicle and followed Hillard as she exited the IGA parking lot. Suspecting that Nelson was attempting to transfer alcohol to the minors, Deputy Matkin followed. After traveling a few blocks, Nelson turned his vehicle into the Duck Inn parking lot, where he

2

came to a brief stop. Deputy Matkin parked across the street. A few minutes later, Nelson's vehicle exited the parking lot, but first waited for Deputy Matkin to pull out in front of him. Deputy Matkin then noticed that Nelson's vehicle failed to have a properly mounted front license plate and turned into a parking lot and waited for Nelson, who was driving behind him, to pass so that he could initiate a traffic stop. However, to Deputy Matkin's surprise, Nelson signaled and pulled his vehicle into the parking lot where Deputy Matkin was parked. Nelson then rolled down his window, as did Deputy Matkin. Nelson then asked "Is there a problem officer or have I done something wrong?" Deputy Matkin responded affirmatively, noting Nelson's failure to properly display a front license plate.

¶5     As Deputy Matkin exited his patrol vehicle and approached Nelson's vehicle, he believed that Nelson was acting as if he did not want the Deputy to look inside his vehicle. Deputy Matkin requested Nelson's license, registration, and proof of insurance, and observed the two 18-packs of beer Nelson had carried from the IGA in the vehicle. Nelson produced a suspended out-of-state license, his only proof of identification, and an expired proof of insurance. As Nelson did so, Deputy Matkin further observed that Nelson's hands were shaking and that his demeanor was anxious and tense. Deputy Matkin then observed that Nelson's eyes were glassy and continuously moved back and forth, raising Deputy Matkin's suspicions that Nelson was impaired by drugs or alcohol. Deputy Matkin further observed that Nelson responded rapidly to questions, often splitting his sentences. At that point, Deputy Matkin did not detect the odor of alcohol.

¶6 Deputy Matkin then turned his attention to Nelson's passenger, who appeared to be under the drinking age, and began to question him. After determining that the passenger was underage, he requested Deputies Ostberg and Dahl to respond to the scene. Hearing the radio call, Montana Highway Patrol Officer Baiamonte (Officer Baiamonte) also responded. All of the officers arrived at the scene within eight minutes of the initial stop.

¶7 During the interim, Deputy Matkin advised Nelson that he would be cited for license and insurance violations. Deputy Matkin then requested the passenger, identifying himself as Brandon Nelson (Brandon), to step out of the vehicle, advising him that he would be cited for Minor in Possession of Alcohol. While escorting Brandon to the patrol vehicle, Deputy Matkin asked Brandon why his pants were wet, to which Brandon replied that a beer had spilled in the vehicle's seat. Deputy Matkin returned to Nelson's vehicle and ordered Nelson to remove the empty beer bottle. At that point, Officer Baiamonte, who had just arrived on the scene, observed a second empty bottle behind Nelson's seat. Thereafter, Nelson was requested to remove that bottle as well. However, although Nelson continually moved his hand across the top of the bottle, he was unable to retrieve it, and Officer Baiamonte assisted him. Deputy Matkin then placed Brandon in his patrol vehicle and again requested that Brandon identify himself. Based on Brandon's answers, dispatch found no record matching Brandon's name and description. Deputy Matkin repeated the process three times to no avail. Brandon's true identity as Brandon Montagne was later determined at the Hill County Detention Center.

¶8 Upon his arrival, Officer Baiamonte had immediately noticed that Nelson's physical actions were nervous and agitated. Officer Baiamonte is experienced and highly trained in recognizing the signs of drug intoxication, and is one of only two individuals in Montana certified to teach drug identification courses at the Montana Law Enforcement Academy. As Officer Baiamonte questioned Nelson, he observed from Nelson's behaviors that he was not merely nervous, and suspected that Nelson was under the influence of drugs or alcohol. He noted that Nelson's pupils were dilated and his eyes continually darted back and forth as he responded to the questions. Nelson also fidgeted and continuously gripped and moved the gear shift. Further, when Officer Baiamonte reached into the vehicle to secure a pocket knife near Nelson's seat, he smelled the odor of alcohol.

¶9 After making these observations and consulting with Deputy Matkin, Officer Baiamonte administered a Horizontal Gaze Nystagmus test (HGN) to Nelson. Nelson exhibited four of the six indicators of being under the influence of an intoxicating substance, although a subsequent preliminary breath test did not indicate the presence of alcohol. Officer Baiamonte then told Nelson that he believed Nelson was under the influence of drugs, and asked Nelson if that was correct. Nelson at first equivocated, but then said he had ingested methamphetamine earlier that night. Nelson was not given *Miranda* warnings prior to this admission. Nelson was then arrested for DUI and taken to the hospital for blood tests. He subsequently consented to a search of his vehicle, where police located methamphetamine and drug paraphernalia which gave rise to the charges against him.

5

¶10 On September 27, 2002, Nelson filed a Motion to Suppress the evidence obtained from the investigative stop of his vehicle. Following a suppression hearing, the District Court denied the motion. On December 2, 2002, Nelson pled guilty to criminal possession of dangerous drugs, a felony, in violation of § 45-9-102, MCA, and criminal possession of drug paraphernalia, a misdemeanor, in violation of § 45-10-103, MCA, reserving the right to appeal the District Court's denial of his suppression motion, which he now challenges.

## STANDARD OF REVIEW

¶11 The standard of review for a district court's denial of a motion to suppress evidence is whether the court's findings are clearly erroneous. *State v. Martinez*, 2003 MT 5, ¶ 19, 314 Mont. 434, ¶ 19, 67 P.3d 207, ¶ 19. Further, we engage in plenary review of conclusions of law to determine whether the district court's interpretation of the law is correct. *Martinez*, ¶ 19.

## DISCUSSION

¶12 **Did the District Court err in denying Nelson's Motion to Suppress Evidence?**

¶13 Nelson makes two primary arguments. First, he argues that his admission to Officer Baiamonte that he had used methamphetamine, Officer Baiamonte's observations of his behavior and the administration of the sobriety tests should be suppressed because officers gave him neither the stop advisory, pursuant to § 46-5-402, MCA (2001),[1] nor the *Miranda*

_____

[1]Section 46-5-402, MCA (2001), provides:
**Stop and Frisk.** A peace officer which has lawfully stopped a person *under 46-5-401*:
. . .
(4) shall inform the person, as promptly as possible under the circumstances and in

6

advisory.[2]  Second, Nelson argues that Officer Baiamonte's DUI investigation at the scene was unlawful because it exceeded the permissible scope of Deputy Matkin's investigative stop.  We address these arguments in turn.

¶14     Nelson focuses his first argument on two pieces of evidence–his admission of methamphetamine use and Officer Baiamonte's observations regarding his inability to retrieve an empty beer bottle from his vehicle–asserting that this information was obtained in violation of § 46-5-402, MCA (2001), and our holding in *State v. Krause*, 2002 MT 63, ¶ 38, 309 Mont. 174, ¶ 38, 44 P.3d 493, ¶ 38.

¶15     In *Krause*, we held that the district court erred by not suppressing the defendant's statements made to an officer prior to the officer giving the stop advisory required by § 46-5-402, MCA (2001).[3]  *Krause*, ¶ 38.  However, the State conceded in the District Court and again on appeal that Deputy Matkin and Officer Baiamonte failed to give the statutory stop advisory, and, consequently, Nelson's statement should be suppressed.  Because this issue is not contested, we need not address it.

¶16     Turning to the second piece of evidence–officer Baiamonte's observations of Nelson's behavior, specifically, Nelson's inability to retrieve a beer bottle–Nelson argues

---

any case before questioning the person, that the officer is a peace officer, that the stop is not an arrest but rather a temporary detention for an investigation, and that upon completion of the investigation, the person will be released if not arrested.

[2]Pursuant to *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, a defendant is entitled to be informed of his right to remain silent and of his right to have an attorney present before an officer initiates a custodial interrogation.

[3]Section 46-5-402, MCA (2001), was repealed by Session Law 2003, Ch. 343, Sec. 2.

that his action in response to Officer Baiamonte's requests at the scene was, in effect, a "statement" and should also be suppressed under *Krause*, as well as *Miranda*. However, our holding in *Krause* required the suppression of a suspect's *verbal statements*, not an officer's observations of the suspect's nonverbal actions or behaviors. *Krause*, ¶¶ 10 and 38. Further, § 46-5-402, MCA, which is the provision interpreted in *Krause*, permits various actions by law enforcement without a prior advisory, such as frisking the suspect and demanding the suspect's name and address. An advisory is required only "before questioning the person." Section 46-5-402(4), MCA. Thus, neither this statute nor our holding in *Krause* require suppression of Officer Baiamonte's observations of Nelson's appearance and behavior.

¶17 Similar reasoning requires that we reject Nelson's reliance on *Miranda*. Nelson argues that he was in custody immediately upon Deputy Matkin's determination to issue a citation for the license violation, and that the evidence obtained thereafter was tainted because of Officer Baiamonte's failure to give him a *Miranda* advisory. As noted, the State does not contest the suppression of Nelson's statement, and, in regard to the officers' observations, *Miranda* offers Nelson no support. The constitutional protections under *Miranda* are afforded during a custodial interrogation, and do not attach at the time an investigative stop is made. In *Hulse v. Dept. of Justice,* 1998 MT 108, ¶ 37, 289 Mont. 1, ¶ 37, 961 P.2d 75, ¶ 37, we held that a "roadside questioning of a detained motorist pursuant to a routine traffic stop does not constitute a custodial interrogation subject to the procedural safeguards of *Miranda.*" *State v. Allen*, 1998 MT 293, ¶ 12, 292 Mont. 1, ¶ 12, 970 P.2d 81, ¶ 12. As we have recognized, Officer Baiamonte's roadside detention, questioning, and

8

field sobriety tests were analogous to a "*Terry* stop,"[4] in which an officer may briefly question a detainee to confirm or dispel his suspicions, but where the detainee is not obligated to respond. *See Hulse*, ¶ 40. Further, Nelson offers no authority, in his request for suppression of all the evidence from the scene, that failure to give the Miranda advisory requires suppression of an officer's observations of a suspect's nonverbal conduct. We thus conclude that the District Court did not err in denying Nelson's motion to suppress evidence.

¶18 In his second primary argument, Nelson contends that Officer Baiamonte's actions violated § 46-5-403,[5] MCA, by exceeding the time necessary to effectuate the purpose of the initial stop made by Deputy Matkin. Although Nelson concedes that his failure to properly mount a front license plate provided particularized suspicion for Deputy Matkin to initiate the investigative stop, he contends this did not provide a particularized suspicion for Officer Baiamonte to further investigate him for DUI. Nelson argues Officer Baiamonte's detention, questioning, and field sobriety tests improperly exceeded the scope of the stop and therefore, unlawfully prolonged the stop, citing to *State v. Carlson*, 2000 MT 320, ¶ 18, 302 Mont.

---

[4]*Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct 1868, 20 L.Ed.2d 889.

[5]Section 46-5-403, MCA, provides:
**Duration of stop**. A stop authorized by 46-5-401 or 46-5-411 may not last longer than is necessary to effectuate the purpose of the stop.

Section 46-5-401(1), MCA, provides:
**Investigative stop and frisk**. In order to obtain or verify an account of the person's presence or conduct or to determine whether to arrest the person, a peace officer may stop any person or vehicle that is observed in circumstances that create a particularized suspicion that the person or occupant of the vehicle has committed, is committing, or is about to commit an offense.

9

508, ¶ 18, 15 P.3d 893, ¶ 18, and *State v. Henderson*, 1998 MT 233, ¶¶ 14-15, 291 Mont. 77, ¶¶ 14-15, 966 P.2d 137, ¶¶ 14-15.

¶19    In *Carlson*, ¶ 18, we held that the police exceeded the time necessary to investigate the defendant for a suspected trespass by detaining the defendant for thirty minutes until a drug-sniffing dog was available, when there was no particularized suspicion to believe that a defendant was under the influence of drugs. However, unlike the defendant in *Carlson*, who showed no signs of being under the influence of drugs, Nelson, upon Deputy Matkin's initial encounter, immediately presented indicators that he was under the influence of alcohol or drugs, and thus, *Carlson* is not controlling here.

¶20    Nelson attempts to contrast *Henderson* by arguing that the driving by the defendant in that case was impaired, while he exhibited no signs of poor driving. However, *Henderson* is more supportive of the State's position. There we held that the district court erred in suppressing evidence, concluding that the investigation progressed properly following the stop for failure to display license tags: "[f]rom the moment that the officer noted the smell of alcohol and the driver's slurred speech, the initial investigative stop took on the quality of an escalating situation in which the additional information gave rise to further suspicions and enlarged the scope of the investigation to that of a possible DUI." *Henderson*, ¶ 22. The same occurred here.

¶21    Although we do not dispute Nelson's contention that the right against unreasonable searches and seizures, as codified in the Fourth Amendment to the United States Constitution and Article 2, Section 11, of the Montana Constitution, are implicated in an investigative

10

stop, thus, requiring that the officer have an objective manifestation to support his particularized suspicion to investigate, *Carlson*, ¶ 18, we conclude that Officer Baiamonte had particularized suspicion to conduct a DUI investigation that properly extended the time of the stop. First, we recall that, prior to the investigative stop, this incident began when Deputy Matkin witnessed Nelson exiting the IGA with two 18-packs of beer and following two minors from the parking lot, which Deputy Matkin suspected was an attempted transfer of alcohol to a minor and which led Deputy Matkin to follow Nelson. Nelson then drove in such a manner that he placed his vehicle in traffic behind Deputy Matkin's vehicle. Deputy Matkin then pulled his vehicle over waiting for Nelson to pass to initiate a traffic stop; however, to his surprise, Nelson signaled and pulled his vehicle in next to that of Deputy Matkin.

¶22 At the scene, Deputy Matkin believed Nelson was trying to keep him from looking inside his vehicle. He then observed Nelson's anxious and nervous demeanor, glassy eyes, shaky hands and rapid speech in which he split his sentences. In turning his attention to Nelson's passenger, Deputy Matkin was thwarted in his multiple attempts to identify the passenger by false answers to his questions. However, in no more than eight minutes, Officer Baiamonte arrived at the scene, and observed Nelson's appearance and the smell of alcohol from the beer spill in the interior of Nelson's vehicle. These served to confirm Deputy Matkin's suspicions and properly established a separate particularized suspicion that Nelson was impaired, and further led to Officer Baiamonte's administration of field sobriety tests, Nelson's arrest for DUI, and the search of the vehicle where methamphetamine and

11

drug paraphernalia were found. In fact, one discovery led to another, and "took on the quality of an escalating situation in which the additional information gave rise to further suspicions and enlarged the scope of the investigation to that of a possible DUI." *Henderson*, ¶ 22. Thus, the stop was appropriately extended for the DUI investigation, and, concomitantly, the time "necessary to effectuate the purpose of the stop" was appropriately extended. Section 46-5-403, MCA.

¶23 Moreover, this Court has never established specific time parameters to which an officer is to adhere to when conducting an investigative stop. Here, the entire investigation, sobriety tests, and arrest of Nelson and his passenger took approximately 24 minutes. We cannot conclude that this time was excessive. We have noted that, while law enforcement officers conducting an investigation or investigatory stop should be guided by principles of reasonableness, "effective law enforcement requires some latitude to be given to investigating officers to react to and follow up on their observations." *State v. Sharp* (1985), 217 Mont. 40, 47, 702 P.2d 959, 963; *also see State v. Roberts*, 1999 MT 59, ¶ 25, 293 Mont. 476, ¶ 25, 977 P.2d 974, ¶ 25. The length of this stop was not improper.

¶24    Affirmed.


                                        /S/ JIM RICE


We concur:

/S/ PATRICIA O. COTTER
/S/ JIM REGNIER
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART