DA 12-0430

IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 66N

MAX NEWLIN,

  Petitioner and Appellant,

  v.

STATE OF MONTANA, on behalf of the
Department of Justice, Motor Vehicle
Division, Driver Improvement Bureau,

  Respondent and Appellee.

APPEAL FROM: District Court of the Twenty-Second Judicial District,
      In and For the County of Carbon, Cause No. DV 12-08
      Honorable Blair Jones, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

      Bradley J. Finn, Attorney at Law, Billings, Montana

    For Appellee:

      Timothy C. Fox, Montana Attorney General, Katie F. Schulz, Assistant
      Attorney General, Helena, Montana

      Alex Nixon, Carbon County Attorney, Red Lodge, Montana

         Submitted on Briefs: February 20, 2013

             Decided: March 12, 2013

Filed:

    _____
          Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(d), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Max Newlin appeals from an order of the Twenty-Second Judicial District Court, Carbon County, denying his Amended Petition for Judicial Review of License Suspension. The District Court orally denied the amended petition on March 22, 2012, at the conclusion of an evidentiary hearing. Thereafter, on June 27, the District Court entered its written Findings of Fact, Conclusions of Law, and Order. Newlin filed his Notice of Appeal on July 18.

¶3 On January 22, 2012, Red Lodge City Police Officer Matthew Grieshop was driving a marked patrol vehicle southbound on Highway 212 near Red Lodge, Montana. Grieshop was on duty and in uniform. Highway 212 is a public highway of the State and is a designated snow-removal route. That evening, it was clear and very cold, and there was snow on the shoulders of the highway.

¶4 At approximately 12:47 a.m., Grieshop observed a vehicle pulled over on the side of the highway. Two of the vehicle's wheels were in the snow along the shoulder. Grieshop was concerned for the safety of the motorists, as the vehicle had pulled over on an unsafe portion of the road. The vehicle, although partially off the roadway, still presented a possible road hazard and potential obstruction to snow-removal equipment. There was little traffic at the time, and the homes in the immediate vicinity, many of which are seasonal or vacation

2

homes, appeared unoccupied or inactive. Given the time, the weather, and the location of the vehicle, Grieshop was concerned for the well-being of the vehicle's occupants and concerned that he may need to offer assistance to the driver or others in the vehicle.

¶5 The darkness prevented Grieshop from ascertaining, without stopping his patrol car and approaching the parked vehicle, whether assistance was needed. Grieshop, therefore, pulled up to the vehicle and activated his patrol vehicle lights for safety reasons. Grieshop exited his patrol car and approached the vehicle. Upon establishing contact with the driver (Newlin), Grieshop first asked "if everything was okay." Grieshop immediately detected the odor of an alcoholic beverage and requested that Newlin submit to a preliminary alcohol screening test. Newlin refused, and Grieshop then seized his driver's license. *See* § 61-8-402(4), MCA.

¶6 Newlin does not dispute that particularized suspicion to conduct a DUI investigation developed once Grieshop made contact with him. Newlin contends, rather, that there was an insufficient legal basis for his initial encounter with Grieshop. Newlin specifically raises the following issue on appeal: Did the District Court correctly apply the community caretaker doctrine in denying Newlin's amended petition to reinstate his driver's license?

¶7 We review a district court's ruling on a petition for reinstatement of a driver's license and driving privileges to determine whether the court's findings of fact were clearly erroneous and its conclusions of law correct. *Weer v. State*, 2010 MT 232, ¶ 7, 358 Mont. 130, 244 P.3d 311. A finding is clearly erroneous if it is not supported by substantial evidence, if the trial court misapprehended the effect of the evidence, or if a review of the

3

record leaves this Court with a definite and firm conviction that a mistake has been made. *State v. Hurlbert*, 2009 MT 221, ¶ 16, 351 Mont. 316, 211 P.3d 869.

¶8 The issues to be determined by a district court in a hearing for reinstatement of a driver's license and driving privileges are limited to:

1. whether the arresting officer possessed a particularized suspicion that the individual in question had been driving or was in actual physical control of a vehicle upon ways of this state while under the influence of alcohol or drugs;

2. whether the petitioner was lawfully under arrest including the existence of probable cause; and

3. whether the petitioner in fact declined to submit to a breath test.

*Widdicombe v. State*, 2004 MT 49, ¶ 8, 320 Mont. 133, 85 P.3d 1271. Newlin's challenge relates to the first issue—whether Grieshop had particularized suspicion—because Newlin argues that the "seizure" from which Grieshop's particularized suspicion developed in this case was not authorized under the community caretaker doctrine. In other words, Newlin concedes that once Grieshop was at the side of his vehicle and made initial contact with Newlin, Grieshop developed particularized suspicion that Newlin had been driving under the influence of alcohol. Newlin argues, however, that Grieshop was not lawfully present at the side of his vehicle at the time when Grieshop developed the particularized suspicion.

¶9 As an initial matter, Newlin contends the District Court incorrectly concluded that the stop was not a seizure. Newlin maintains that when Grieshop activated his patrol lights, pulled in behind Newlin's vehicle, and made contact with him, he was "seized." Because we conclude that Grieshop's encounter with Newlin was legal under the community caretaker doctrine, we need not determine the correctness of the District Court's conclusion that

4

"Grieshop's actions . . . did not initially constitute a detention or seizure." We recognize, as we did in *State v. Spaulding*, 2011 MT 204, 361 Mont. 445, 259 P.3d 793, that there may be fact-specific situations in which a welfare check does not involve a seizure. *Spaulding*, ¶ 19. Nonetheless, the community caretaker stop and the *Terry* stop "are simply different branches of the same principle—both are constitutionally 'reasonable' warrantless seizures because both are grounded in the officer's necessarily swift action or reaction to an on-the-spot situation, limited in scope to the purpose for which the stop is made." *Spaulding*, ¶ 18 (discussing *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868 (1968)). Thus, "[i]n the usual case, a welfare check by its very nature necessarily involves a brief seizure . . . in order for the officer to ascertain whether the citizen needs assistance or is in peril." *Spaulding*, ¶ 18.

¶10 We use the following test to determine if the community caretaker doctrine applies in an encounter between government officials and citizens:

> First, as long as there are objective, specific, and articulable facts from which an experienced officer would suspect that a citizen is in need of help or is in peril, then that officer has the right to stop and investigate. Second, if the citizen is in need of aid, then the officer may take appropriate action to render assistance or mitigate the peril. Third, once, however, the officer is assured that the citizen is not in peril or is no longer in need of assistance or that the peril has been mitigated, then any actions beyond that constitute a seizure which must be justified by something other than the community caretaker doctrine, such as particularized suspicion or probable cause.

*Spaulding*, ¶ 21 (footnote omitted); *State v. Lovegren*, 2002 MT 153, ¶ 25, 310 Mont. 358, 51 P.3d 471; *State v. Graham*, 2007 MT 358, ¶ 25, 340 Mont. 366, 175 P.3d 885.

¶11 Police officers have a duty not only to fight crime, but also to investigate uncertain situations in order to ensure public safety. *State v. Marcus Nelson*, 2004 MT 13, ¶ 6, 319 Mont. 250, 84 P.3d 25. This Court has previously recognized that it would be a dereliction

5

of an officer's duties to walk away from an uncertain situation in which a motorist may be in need of help. *Lovegren*, ¶ 26; *State v. Seaman*, 2005 MT 307, ¶ 15, 329 Mont. 429, 124 P.3d 1137. Moreover, for officers to discharge their duties effectively, they must be given some latitude to react to and follow up on their observations. *See State v. Jonathan Nelson*, 2004 MT 310, ¶ 23, 323 Mont. 510, 101 P.3d 261.

¶12 In the instant case, the winter weather and temperature, the time of day, the location and manner in which the vehicle was parked, and the possibility that the vehicle was creating a road hazard and potential obstacle on a snow-removal route are objective, specific, and articulable facts from which Grieshop could suspect that his assistance might be needed. Indeed, under these circumstances, it was Grieshop's duty to investigate the situation. *Cf. Spaulding*, ¶ 25. Thereafter, upon encountering Newlin and detecting the odor of alcohol, the welfare check ripened into a particularized suspicion to conduct an investigation into driving under the influence, which eventually developed into probable cause for an arrest. Such an escalation of events, leading to Newlin's arrest and license revocation, was proper. *See Lovegren*, ¶ 27 (citing *Hulse v. State*, 1998 MT 108, 289 Mont. 1, 961 P.2d 75, and *Grinde v. State*, 249 Mont. 77, 81, 813 P.2d 473, 476 (1991)).

¶13 We have determined to decide this case pursuant to Section I, Paragraph 3(d) of our Internal Operating Rules, which provides for noncitable memorandum opinions. A review of the record demonstrates that no mistake or misapprehension was made by the District Court in its consideration of the evidence. Further, there is substantial evidence in the record supporting the District Court's finding that Grieshop had objective, specific, and articulable facts which would justify a concern that assistance might be needed. Finally, the law setting

forth the community caretaker doctrine confirms that the District Court's conclusions of law regarding the doctrine's applicability to the present case were correct.

¶14     Affirmed.

/S/ LAURIE McKINNON

We Concur:

/S/ BETH BAKER
/S/ MICHAEL E WHEAT
/S/ PATRICIA COTTER
/S/ BRIAN MORRIS