No. 00-202

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 237

CITY OF MISSOULA,

Plaintiff and Respondent,

v.

BRADLEY A. COOK,

Defendant and Appellant.

APPEAL FROM: District Court of the Fourth Judicial District,

In and for the County of Missoula,

The Honorable Douglas G. Harkin, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

John M. Bennett, Attorney at Law, Missoula, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General; Micheal S. Wellenstein,

Assistant Attorney General, Helena, Montana

Gary L. Hendricks, Missoula Deputy City Attorney, Missoula, Montana

Submitted on Briefs: April 12, 2001
Decided: December 3, 2001

Filed:

_____

Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1 Bradley A. Cook (Cook) appeals from the order entered by the Fourth Judicial District Court, Missoula County, upholding the order of the Municipal Court for the City of Missoula which denied his motion to suppress evidence. We affirm.

¶2 The issue on appeal is whether the District Court erred in determining that the Municipal Court correctly denied Cook's motion to suppress.

## BACKGROUND

¶3 On April 11, 1999, Missoula City Police Officer Ken Guy (Guy) initiated an investigative stop of a vehicle based on his belief that the driver was impaired. The investigative stop culminated in the driver--identified as Cook--being arrested and charged by complaint in the Municipal Court with the offenses of driving under the influence of alcohol (DUI) and operating a motor vehicle with an alcohol concentration of 0.10 or more (DUI *per se*). Cook subsequently moved the Municipal Court to suppress all evidence acquired during the investigative stop, arguing that the stop was not justified by a particularized suspicion that an offense was being committed. Following a hearing, the Municipal Court denied the motion. Cook then pleaded guilty to the offense of DUI *per se* pursuant to a plea agreement in which he reserved his right to appeal the Municipal Court's denial of his motion to suppress.

¶4 Cook appealed to the District Court. The court subsequently entered its order and memorandum in which it concluded that Guy had a sufficient particularized suspicion that a crime was being committed to justify his investigative stop of Cook's vehicle and upheld the Municipal Court's order denying the motion to suppress. Cook appeals.

## STANDARD OF REVIEW

¶5 "On appeal from the denial of a motion to suppress, this Court reviews factual findings to determine whether they are clearly erroneous and conclusions of law to determine whether they are correct." State v. Halvorson, 2000 MT 56, ¶ 9, 299 Mont. 1, ¶ 9, 997 P.2d 751, ¶ 9.

## DISCUSSION

¶6 Did the District Court err in determining that the Municipal Court correctly denied Cook's motion to suppress?

¶7 The District Court upheld the Municipal Court's denial of Cook's motion to suppress based on its conclusion that Guy's investigative stop of Cook's vehicle was justified by a particularized suspicion that an offense was being committed. Cook asserts that the District Court's conclusion is erroneous.

¶8 Section 46-5-401, MCA, provides that

> [i]n order to obtain or verify an account of the person's presence or conduct or to determine whether to arrest the person, a peace officer may stop any person or vehicle that is observed in circumstances that create a particularized suspicion that the person or occupant of the vehicle has committed, is committing, or is about to commit an offense.

Thus, an investigative stop must be justified by some objective manifestation that the person stopped is committing, has committed or is about to commit an offense. Anderson v. State Dept. of Justice (1996), 275 Mont. 259, 263, 912 P.2d 212, 214. We have adopted a two-part test to determine whether an investigative stop was justified by sufficient particularized suspicion. First, the prosecution is required to show objective data from which an experienced officer could make certain inferences. Second, the prosecution must show a resulting suspicion that the occupant of the vehicle in question is or has been engaged in wrongdoing. Anderson, 275 Mont. at 263, 912 P.2d at 214. The determination of whether a particularized suspicion exists is made in light of the totality of the circumstances surrounding the stop. Anderson, 275 Mont. at 263, 912 P.2d at 214. The totality of the circumstances includes the evidence as evaluated by the law enforcement officer in light of the officer's experience and training. State v. Henderson, 1998 MT 233, ¶12, 291 Mont. 77, ¶ 12, 966 P.2d 137, ¶ 12.

¶9 At the hearing before the Municipal Court, Guy testified regarding the circumstances

surrounding his investigative stop of Cook's vehicle. At approximately 1:17 a.m. on Sunday, April 11, 1999, while on patrol in Missoula, Montana, Guy observed a vehicle stopped at a flashing red traffic light at an intersection. Guy executed a u-turn in order to pull up behind the vehicle. According to Guy, approximately five seconds elapsed from the time he first observed the vehicle to when he stopped behind it. Although there was no traffic approaching the intersection which would have prevented the vehicle from proceeding, the vehicle remained stopped at the intersection for at least an additional 10 seconds after Guy pulled up behind it. Guy then honked the horn of his patrol car in an effort to get the vehicle to proceed. The vehicle remained stopped for an additional 10 to 15 seconds and then proceeded through the intersection. By that point, Guy was concerned that the vehicle's driver might be impaired by alcohol, so he activated the patrol car's overhead lights and stopped the vehicle.

¶10 Guy also testified that he had over 8 years of experience as a law enforcement officer and, during that time, had written approximately 250 to 275 DUI citations and assisted other officers with over 100 DUI arrests. Furthermore, he testified that he had completed numerous courses providing specific training in DUI detection. Based on that training and experience, Guy testified that a law enforcement officer is more likely to encounter a driver impaired by alcohol between the hours of 11:00 p.m. on Friday nights and 3 a.m. on Saturday mornings and between the same hours on Saturday nights and Sunday mornings. Additionally, according to Guy, a driver's observably slow response to traffic signals is one of a number of visual indicators that the driver may be impaired. Guy conceded, however, that the presence of a law enforcement officer at an intersection can have an unnerving effect on a driver's normal driving routine.

¶11 Based on this testimony, Cook asserts that the only information on which Guy based his decision to stop Cook's vehicle was that Cook paused at the intersection for what Guy believed to be an unusual length of time. Cook argues that this information is insufficient to create a particularized suspicion that he was committing a criminal offense and, therefore, does not justify the investigative stop. He relies on State v. Reynolds (1995), 272 Mont. 46, 899 P.2d 540, in support of his argument.

¶12 In Reynolds, a law enforcement officer observed a vehicle traveling at a speed which he thought was bordering on too fast for the traffic conditions. The officer drove to where he thought the vehicle would reappear and met it at an intersection. Although the vehicle had the right-of-way, it paused for 7 to 10 seconds before proceeding through the intersection. The officer then initiated an investigative stop of the vehicle which resulted

in the driver--Reynolds--being charged with DUI. Reynolds, 272 Mont. at 48, 899 P.2d at 542. Reynolds moved to dismiss on the basis that the investigative stop was not justified by a particularized suspicion that he was committing an offense. The motion was denied and Reynolds appealed. Reynolds, 272 Mont. at 48, 899 P.2d at 541.

¶13 In that case, we held that the officer had insufficient objective data to support a particularized suspicion that an offense was being committed. Reynolds, 272 Mont. at 51, 899 P.2d at 543. The officer observed only a "possible" traffic violation and, with regard to the 7 to 10 second pause at the intersection, the officer conceded that drivers on the left do not always grant the right-of-way. The officer also admitted that the presence of a police car at the intersection could unnerve a driver's usual driving routine. The officer observed no other driving violations or anomalies and the driver did not exhibit any behavior consistent with driving under the influence of alcohol. Reynolds, 272 Mont. at 51, 899 P.2d at 543.

¶14 Cook argues that Reynolds is analogous to the present case because the only information Guy relied on in stopping his vehicle here was that Cook stopped at the intersection for what Guy believed to be too long a period of time. He asserts that, under Reynolds, pausing at an intersection is insufficient to establish the necessary particularized suspicion to justify an investigative stop. Cook also contends that, as in Reynolds, his waiting at the intersection could have been explained by the unnerving effect of Guy's patrol car behind his vehicle. We conclude, however, that Reynolds is distinguishable.

¶15 Here, Guy testified that Cook's vehicle waited at the intersection for at least 25 seconds before proceeding, more than twice the length of time at issue in Reynolds. Moreover, approximately 10 seconds of that time occurred after Guy pulled in behind Cook and another 10 to 15 seconds elapsed after Guy signaled Cook to proceed through the intersection by honking his patrol car's horn, circumstances which did not exist in Reynolds. Nor was there any traffic near the intersection. Guy also testified that, based on his training and experience, the failure to respond to traffic signals can indicate that a driver is impaired. Nothing in Reynolds indicates that the officer in that case relied on training and experience to interpret Reynolds' pause at the intersection as indicative of impaired driving. Furthermore, Guy testified that the stop occurred in the early morning hours of a Sunday, a time at which he knew, based on his training and experience, he was more likely than usual to encounter an impaired driver. As stated above, our review of the totality of the circumstances surrounding an investigative stop includes the evidence as evaluated by the law enforcement officer in light of the officer's experience and training.

<u>Henderson</u>, ¶12.

¶16 We conclude that, based on the totality of the circumstances, Guy had sufficient objective data--when viewed in light of his experience and training--from which to make inferences regarding Cook's possible impairment, resulting in a particularized suspicion that Cook was committing an offense, and to conduct an investigative stop of Cook's vehicle. Consequently, we hold that the District Court did not err in determining that the Municipal Court correctly denied Cook's motion to suppress on that basis.

¶17 Affirmed.

/S/ KARLA M. GRAY

We concur:

/S/ PATRICIA COTTER

/S/ JIM RICE

/S/ W. WILLIAM LEAPHART

Justice James C. Nelson dissents.

¶18 On the factual record set out in the majority opinion, I cannot agree that the totality of circumstances supports a determination that Officer Guy had particularized suspicion for the investigative stop. Therefore, I would reverse.

¶19 There is not a scintilla of evidence that Cook violated any traffic law or that he was driving erratically prior to the stop. In fact, Cook was obeying the law. He was stopped or was in the process of stopping at a flashing red light.

¶20 Moreover, Cook's subsequent delay in proceeding through the intersection was not only explained by but was fully justified for two reasons: (1) because of Officer Guy's own maneuver--i.e., making a sudden u-turn for no apparent reason, pulling in behind Cook's vehicle, and then honking his horn; and (2) because of the time of day and traffic conditions--i.e., early Sunday morning when there was little or no other traffic to prompt the officer's conduct.

¶21 I submit that any motorist (even one who was stone-cold sober) would be unnerved and confused when confronted with this sort of police activity. Certainly under these circumstances the better part of valor and common sense would be for the motorist to do exactly what Cook did--wait to see what the officer wanted and why he had suddenly pulled in behind the motorist's car.

¶22 I conclude that our decision in *State v. Reynolds* (1995), 272 Mont. 46, 899 P.2d 540, controls and dictates to the same result. Indeed, from a factual standpoint, there were more facts supporting particularized suspicion in *Reynolds* than there are in the case at bar.

¶23 I dissent.

/S/ JAMES C. NELSON

Justices Terry N. Trieweiler and Jim Regnier concur in the foregoing dissent.

/S/ JIM REGNIER

/S/ TERRY N. TRIEWEILER