Justice Ingrid Gustafson delivered the Opinion of the Court.
***232 ¶1 Appellant Billy Clayton Reeves III (Reeves) appeals the order of the Fourth Judicial District Court, Missoula County, denying his Motion to Dismiss based on a finding that law enforcement had the requisite particularized suspicion to initiate a traffic stop. We reverse.
FACTUAL AND PROCEDURAL BACKGROUND
¶2 On the afternoon of January 14, 2017, Missoula County Sheriff's Deputy Tyler Terrill (Deputy Terrill) noticed a vehicle in a brewery parking lot. The driver of the vehicle was later identified as Reeves. From the hotel parking lot across the street, Deputy Terrill watched Reeves leave his parking space and navigate toward the exit of the brewery parking lot. At the same time, Deputy Terrill drove his patrol vehicle toward the exit of the hotel parking lot. Although the two parking lot exits are somewhat offset across from each other, they essentially form a four-way intersection with the through street, Trumpeter Way. Deputy Terrill arrived at the intersection just before Reeves, giving Deputy Terrill the right of way; however, Deputy Terrill did not take that right of way or indicate to Reeves to proceed into the intersection. According to Deputy Terrill, upon making eye contact from across the intersection, Reeves exhibited a "deer-in-the-headlights" facial expression.
¶3 After waiting 8-10 seconds at the intersection, Reeves activated his turn signal. Another 2-4 seconds later, he made a legal left-hand turn onto an icy Trumpeter Way, passing directly in front of Deputy Terrill. Deputy Terrill then initiated a traffic stop, informing Reeves, "the reason I stopped you is that you didn't use your turn signal before that intersection. In a business district, you have to have it at least 100 feet before the intersection." Deputy Terrill later conceded that Reeves' conduct did not constitute a traffic violation. Deputy Terrill also conceded the brewery parking lot did not provide Reeves with a 100-foot approach in which to signal prior to the intersection.
¶4 When he approached Reeves' vehicle, Deputy Terrill noted a strong odor of alcohol. After Reeves refused the standardized field sobriety tests and the breathalyzer test, Deputy Terrill took Reeves to the hospital for a *396 blood draw. A subsequent analysis indicated Reeves' blood alcohol content was over twice the legal limit to drive.
¶5 On April 26, 2017, Reeves filed a Motion to Dismiss in Missoula County Justice Court (Justice Court), claiming Deputy Terrill lacked the particularized suspicion required to initiate a traffic stop. On August 23, 2017, the Justice Court granted his motion. The State appealed to the Fourth Judicial District Court (District Court). On ***233 November 13, 2017, Reeves filed a Motion to Dismiss, again claiming Deputy Terrill lacked particularized suspicion. The District Court denied his motion after finding Deputy Terrill had particularized suspicion. Following a nonjury trial, the District Court entered judgment against Reeves for Aggravated Driving Under the Influence-Third Offense in violation of § 61-8-465, MCA. Reeves now appeals the District Court's order finding Deputy Terrill had the requisite particularized suspicion to initiate a traffic stop. We reverse.
STANDARD OF REVIEW
¶6 A district court's finding that particularized suspicion exists is a question of fact, which we review for clear error. State v. Gill , 2012 MT 36, ¶ 10, 364 Mont. 182, 272 P.3d 60 (citation omitted). A finding is clearly erroneous if it is not supported by substantial evidence, if the lower court has misapprehended the effect of the evidence, or if our review of the record leaves us with the firm conviction that a mistake has been made. Gill , ¶ 10.
DISCUSSION
¶7 The Fourth Amendment to the United States Constitution and Article II, Section 11 of the Montana Constitution protects persons against unreasonable searches and seizures, including unjustified traffic stops. State v. Elison , 2000 MT 288, ¶ 15, 302 Mont. 228, 14 P.3d 456. To justify a traffic stop, law enforcement must have a particularized suspicion that the occupant of the vehicle is committing, has committed, or will commit an offense. § 46-5-401(1), MCA.
¶8 In order for the State to establish particularized suspicion it must show: 1) objective data from which experienced law enforcement can make certain inferences; and 2) a resulting suspicion that the occupant of a certain vehicle is or has been engaged in wrongdoing or was a witness to criminal activity. State v. Gopher , 193 Mont. 189, 194, 631 P.2d 293, 296 (1981). Inarticulable hunches are not objective data that meet this burden, and traffic stops based on such are not justified. State v. Reynolds , 272 Mont. 46, 49, 899 P.2d 540, 542 (1995) (citation omitted).
¶9 In the present case, Deputy Terrill suspected Reeves was driving under the influence. The only issue is whether there was objective data available to Deputy Terrill to support that suspicion. We conclude there was not.
¶10 The State argues the totality of the following facts and inferences constitute objective data to support Deputy Terrill's suspicion: 1)
***234 Reeves was leaving a brewery parking lot, which suggests he had consumed alcohol; 2) Reeves exhibited a deer-in-the-headlights facial expression, which suggests he was panicked to see law enforcement; 3) Reeves waited 10-14 seconds before exiting the parking lot, which suggests his decision-making ability was impaired; and 4) Reeves failed to activate his turn signal in advance of the exit, which suggests he was trying to avoid being stopped by determining which direction Deputy Terrill was turning. We disagree. Nothing about Reeves' conduct could have objectively indicated to Deputy Terrill that, of all the drivers leaving the brewery parking lot, Reeves-in particular-was driving under the influence.
¶11 While law enforcement are not required to be certain their suspicions are correct, their suspicions must be particularized as to the person being stopped. Section 46-5-401, MCA ; State v. Farabee , 2000 MT 265, ¶ 19, 302 Mont. 29, 22 P.3d 175 (citation omitted). Without objective data to support Deputy Terrill's suspicion of Reeves, that suspicion must necessarily have been based on guesswork or inarticulable hunches. Terry v. Ohio , 392 U.S. 1, 22, 88 S. Ct. 1868, 1879, 20 L.Ed.2d 889 (1968) (citing Beck v. Ohio , 379 U.S. 89, 96-97, 85 S. Ct. 223, 229, 13 L.Ed.2d 142 (1964) ). Neither of which can *397 support particularized suspicion. Reynolds , 899 P.2d at 542 (citation omitted). To hold otherwise would expose virtually any driver leaving a location where alcohol is sold or consumed-no matter the manner in which he or she is driving-to the burdens of unreasonable stops.
¶12 In Reynolds , we held a "possible traffic violation combined with no other objective data" cannot support particularized suspicion for a DUI. Reynolds , 899 P.2d at 543. Law enforcement thought Reynolds might be driving too fast for the road conditions, and after observing Reynolds wait 7-10 seconds at a subsequent intersection, law enforcement initiated a stop. Reynolds , 899 P.2d at 543. We held Reynold's conduct was neither illegal nor consistent with a person driving under the influence, and therefore it could not be the requisite objective data to support a particularized suspicion that he was driving under the influence. Reynolds , 899 P.2d at 543.
¶13 The State's attempt to distinguish Reynolds from the present case does not persuade us. The State argues that Reeves' conduct provided Deputy Terrill with a "logical string of observable events" that was not available to law enforcement in Reynolds . The facts and inferences identified by the State are entirely consistent with a law-abiding person driving in a safe and prudent manner. See Reynolds , 899 P.2d at 543. Simply attaching inferences of nefariousness to such ***235 facts does not persuade us that Deputy Terrill had objective data to support his suspicion. When the only basis for suspecting a specific person of wrongdoing is inferences that could be drawn from the conduct of virtually any law-abiding person, the resulting suspicion cannot, by definition, be particularized. See Reynolds , 899 P.2d at 543. Such inferences, when based on nothing more than inarticulable hunches, are not the building blocks of particularized suspicion but rather subject drivers to the perils of profiling and other impermissible motives for initiating traffic stops.
¶14 The State's reliance on State v. Trombley , 2005 MT 174, 327 Mont. 507, 116 P.3d 771 ; City of Missoula v. Cook , 2001 MT 237, 307 Mont. 39, 36 P.3d 414 ; and State v. Elison , 2000 MT 288, 302 Mont. 228, 14 P.3d 456 is misplaced. These cases are consistent with our holding in Reynolds . In each case, law enforcement observed legal conduct in conjunction with other objective data that supported a particularized suspicion that the defendant was engaged in wrongdoing. Such objective data is wholly absent from the present case.
¶15 In Trombley we held that a legal U-turn supported particularized suspicion when observed in conjunction with other unsafe driving maneuvers. Trombley , ¶ 8. Law enforcement observed Trombley execute a legal U-turn but subsequently straddle the center line, drift over the fog line, and fail to signal while changing lanes. Trombley , ¶ 10. The subsequent conduct was a manifest pattern of unsafe driving and was consistent with a person driving under the influence. Trombley , ¶ 10. This pattern constituted the requisite objective data to support a particularized suspicion that Trombley was driving under the influence. Trombley , ¶ 10.
¶16 Unlike in Trombley , Reeves exhibited no unsafe driving behaviors and Deputy Terrill concedes Reeves did not commit any traffic violations. There is nothing to suggest Reeves' conduct was similarly unsafe or consistent with a person driving under the influence as in Trombley . Reeves left his parking space, navigated the parking lot without incident, stopped at the intersection, and waited a prudent amount of time-given the icy conditions and Deputy Terrill's failure to seize the right of way-before signaling and executing a lawful left-hand turn. This conduct was safe, prudent, and not consistent with a person driving under the influence.
¶17 In Cook we held a late-night and exceptionally delayed stop at a flashing red light constituted the requisite objective data to support a particularized suspicion. Cook , ¶ 16. Specifically, law enforcement observed Cook's vehicle waiting at a flashing red light in an otherwise ***236 empty intersection. Cook , ¶ 9. The officer stopped behind Cook and, after waiting nearly 20 seconds, honked at him to proceed. Cook , ¶ 9. Cook waited yet another 10 to 15 seconds before entering the intersection. Cook , ¶ 9. In deciding Cook , we held that despite the legality of the conduct, the *398 excessive length of the delay combined with the delay occurring shortly after the bars closed constituted the requisite objective data to support a particularized suspicion that Cook was engaged in wrongdoing. Cook , ¶¶ 14-15.
¶18 Distinguishable here, the length of Reeves' delay was only a small fraction of the delay in Cook . Reeves' stop occurred in the middle of the afternoon, hours before bars closed. The intersection was not empty in that Deputy Terrill had arrived to it prior to Reeves such that Reeves would reasonably expect to cede the right of way to Officer Terrill. Reeves' delay may well have been influenced by Deputy Terrill's failure to claim the right of way. If-as we held in Reynolds -the mere presence of law enforcement at the intersection could "have an unnerving effect on a driver's normal driving routine," then law enforcement having but failing to claim the right of way at an icy intersection could also have such an effect.
¶19 In Elison we held that, under certain circumstances, a driver's attempt to avoid being stopped by law enforcement can constitute the objective data needed to support particularized suspicion. Elison , ¶ 21. Specifically, after being informed that Elison might possess marijuana, the officer located Elison driving behind his patrol vehicle. Elison , ¶ 7. To initiate a traffic stop, the officer attempted to get behind Elison by slowing his patrol vehicle to allow Elison to pass. Elison , ¶ 7. This attempt was unsuccessful as Elison repeatedly slowed his own vehicle and changed lanes to stay behind the patrol vehicle. Elison , ¶ 7. The officer was only able to initiate a stop after forcing Elison to pass him by completely stopping his patrol vehicle. Elison , ¶ 7. This evasive conduct, in conjunction with the possible possession of marijuana, was objective data to support a particularized suspicion that Elison was engaged in wrongdoing.
¶20 Neither Reeves initial act (i.e., leaving the brewery parking lot) nor the subsequent allegedly-evasive conduct (i.e., delaying activation of his turn signal) are sufficiently analogous to Elison to provide Deputy Terrill with particularized suspicion justifying a traffic stop. The State argues the initial act of leaving a brewery, like possible marijuana possession in Elison , supports the inference that a person doing so has a motive to avoid being stopped by law enforcement. We disagree. Simply leaving a brewery is not illegal, immoral, or suspect, ***237 and cannot-without any other objective data-logically support the inference that doing so gives a person a motive to avoid being stopped. See Reynolds , 899 P.2d at 543.
¶21 Furthermore, Reeves' conduct after noticing Deputy Terrill is distinguishable from Elison's conduct. Elison executed a series of objectively evasive maneuvers that could support the inference that Elison was attempting to avoid being stopped. Elison , ¶ 7. On the other hand, Reeves' delay was not a series of any kind; he was delayed in activating his turn signal. It was a single act and could readily be explained by Deputy Terrill's failure to claim his right of way. To further dispel the inference that Reeves was attempting to avoid being stopped, we note that, when confronted with the choice between turning right or turning left, Reeves choose the direction that brought him directly in front of Deputy Terrill.
¶22 Reeves committed no traffic violations and his driving behaviors were entirely consistent with a law-abiding person driving in a safe and prudent manner. His "deer-in-the headlight" look provided Deputy Terrill with no additional information indicative of a person driving under the influence. Under the circumstances of this case we are left with the firm conviction that a mistake has been made. See Gill , ¶ 10. Deputy Terrill did not have objective data available to him to support a particularized suspicion that Reeves was committing, had committed, or was about to commit an offense. The traffic stopped was not justified pursuant to § 46-5-401, MCA.
CONCLUSION
¶23 Because the traffic stop was not justified under § 46-5-401, MCA, we reverse the District Court's denial of Reeves' Motion to Dismiss and remand to the District Court to vacate Reeves' conviction and dismiss with prejudice the charge against him.
We concur:
MIKE McGRATH, C.J.
JAMES JEREMIAH SHEA, J.
DIRK M. SANDEFUR, J.
JIM RICE, J.