FILED

11/02/2021

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 20-0215

DA 20-0215

IN THE SUPREME COURT OF THE STATE OF MONTANA

2021 MT 285N

CITY OF MISSOULA,

     Plaintiff and Appellee,

  v.

JOHN RAY ADAMS,

     Defendant and Appellant.

APPEAL FROM:     District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DC-19-725
Honorable Robert L. Deschamps, III, Presiding Judge

COUNSEL OF RECORD:

     For Appellant:

          Chad Wright, Appellate Defender, Kristen L. Peterson, Assistant Appellate
Defender, Helena, Montana

     For Appellee:

          Austin Knudsen, Montana Attorney General, Bree Gee, Assistant Attorney
General, Helena, Montana

          James P. Nugent, Missoula City Attorney, Angela Robertson-Bakken,
Senior Deputy City Attorney, Missoula, Montana

Submitted on Briefs:  October 13, 2021

Decided:  November 2, 2021

Filed:

_____
               Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion, shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 John Adams appeals the February 21, 2020 Order of the Fourth Judicial District Court, Missoula County, affirming an order of the Municipal Court of the City of Missoula, denying Adams' motion to suppress evidence based on a lack of particularized suspicion for a traffic stop. We affirm.

¶3 Shortly after 3 a.m. on June 2, 2019, while on routine patrol in a commercial area, Missoula Police Officer Brian Vreeland observed a white Cadillac parked along a public street near a U-Haul storage and service center. Through the car's front window, Officer Vreeland noticed a man in the back seat who appeared to slide down as the patrol car drove past. Officer Vreeland then watched as a woman quickly got into the front passenger seat of the car. Officer Vreeland recognized the woman from previous encounters, and given the late hour and commercial location, he made a U-turn, activated his lights, and pulled up behind the Cadillac "to figure out why" they were there. As he approached the car, Officer Vreeland observed that the man was no longer in the vehicle. When he asked the woman who the man was and where he went, she told him the man was Adams, and that he was her boyfriend, but she did not know where he went.

¶4     Officer Vreeland called for backup, alerting other units that Adams "had taken off," and scanned the area with his flashlight.  After a few minutes, he spotted Adams across the street, hiding under a U-Haul truck.  Also under the truck were two full cans of gasoline and a siphon hose.  Officer Vreeland observed that gasoline was pouring onto the ground, that Adams reeked of gasoline, and he had gasoline on his hands and clothes.

¶5     Adams was arrested and charged in municipal court for theft and obstructing a peace officer.   Adams moved to suppress the evidence against him on the grounds that Officer Vreeland's initial stop of his vehicle was not supported by particularized suspicion, and evidence of Adams under the truck with the gas cans and siphon hose should be suppressed as fruit of the poisonous tree.

¶6     During the hearing on Adams' motion to suppress, Officer Vreeland testified that he believed the male had slid down in the back seat "to avoid me"; he knew that U-Haul trucks were easy targets for siphoning gas; and his initial suspicion of criminal activity was further aroused when he recognized Adams' girlfriend, who had a disability that Officer Vreeland thought might prevent her from owning or being able to drive a car.

¶7     The Municipal Court denied the motion to suppress, concluding that Adams was not detained until he was discovered under the U-Haul, and any alleged illegal detention of the female passenger and the vehicle did not extend to Adams because he was not in the vehicle at the time it was allegedly seized.  Adams pleaded no contest to the theft charge and reserved the right to appeal the denial of the motion to suppress to the District Court.  The

City dismissed the obstruction charge. The Municipal Court sentenced Adams to 12 months in jail, with all but five days suspended, and with credit for one day served.

¶8 The District Court affirmed the Municipal Court's denial of Adams' motion to suppress. The District Court agreed that Adams was not detained until he was found under the U-Haul and held that Officer Vreeland had particularized suspicion for that detention based on the totality of the circumstances.

¶9 On appeal from a municipal court of record to a district court, the district court's role is that of an intermediate appellate court. *City of Billings v. Rodriguez*, 2020 MT 9, ¶ 6, 398 Mont. 341, 456 P.3d 570. We review a district court's decision as if the appeal was originally filed in this Court, applying the appropriate standard of review. *City of Great Falls v. Allderdice*, 2017 MT 58, ¶ 7, 387 Mont. 47, 390 P.3d 954.

¶10 We review a lower court's grant or denial of a motion to suppress to determine whether its findings of fact are clearly erroneous and whether the lower court correctly applied those findings as a matter of law. *Rodriguez*, ¶ 6. A finding of fact is clearly erroneous if it is not supported by substantial credible evidence, if the trial court misapprehended the effect of the evidence, or if our review of the record leaves us "definitely and firmly convinced" that a mistake has been made. *Allderdice*, ¶ 8; *State v. Deines*, 2009 MT 179, ¶ 6, 351 Mont. 1, 208 P.3d 857.

¶11 The Fourth Amendment to the United States Constitution and Article II, Section 11, of the Montana Constitution protect Montana citizens from unreasonable searches and seizures by the government. *State v. Graham*, 2007 MT 358, ¶ 12, 340 Mont. 366,

175 P.3d 885. A constitutional seizure occurs when government action deprives an individual of dominion over his or her person or property. *State v. Staker*, 2021 MT 151, n.8, 404 Mont. 307, 489 P.3d 489 (citing *State v. Loh*, 275 Mont. 460, 468, 914 P.2d 592, 597 (1996)); *State v. Ochadleus*, 2005 MT 88, ¶ 29, 326 Mont. 441, 110 P.3d 448. The extent of the interference with the defendant's possessory interest in his or her property determines whether a seizure has occurred. *Ochadleus*, ¶ 29. "[S]eizures of property are subject to Fourth Amendment scrutiny even though no search within the meaning of the Amendment has taken place." *Soldal v. Cook County*, 506 U.S. 56, 68, 113 S. Ct. 538, 547 (1992).

¶12 Pursuant to § 46-5-401(1), MCA, a police officer "may stop any person or vehicle that is observed in circumstances that create a particularized suspicion that the person or occupant of the vehicle has committed, is committing, or is about to commit an offense." The State carries the burden of proof in asserting that law enforcement had the requisite "particularized suspicion" to conduct an investigatory stop. *State v. Pratt*, 286 Mont. 156, 161, 951 P.2d 37, 40 (1997). For a peace officer to have particularized suspicion or reasonable grounds for an investigatory stop, the officer must have: "(1) objective data and articulable facts from which he or she can make certain reasonable inferences; and (2) a resulting suspicion that the person to be stopped has committed, is committing, or is about to commit an offense." *Brown v. State*, 2009 MT 64, ¶ 20, 349 Mont. 408, 203 P.3d 842. Whether particularized suspicion exists is a question of fact that requires consideration of the totality of the circumstances, including the quantity, or content, of the information

5

available to the officer at the time of the investigative stop, and its quality, or degree of reliability. *State v. Elison*, 2000 MT 288, ¶ 16, 302 Mont. 228, 14 P.3d 456 (citing *Pratt*, 286 Mont. at 161, 951 P.2d at 40). The government's compelling "interest in 'effective law enforcement' demands that officers in the field have 'some latitude' to reach, follow up on, and confirm or dispel initial suspicions of criminal activity." *State v. Hoover*, 2017 MT 236, ¶ 23, 388 Mont. 533, 402 P.2d 1224 (quoting *State v. Sharp*, 217 Mont. 40, 47, 702 P.2d 959, 963 (1985)).

¶13 Adams argues that Officer Vreeland's observations as he drove past the Cadillac were insufficient to establish particularized suspicion that the vehicle's occupants were engaged in, or about to engage in, criminal activity. Adams asserts that the lower courts never made a finding as to the officer's particularized suspicion to approach the car because the Municipal Court determined that Adams was not seized until Officer Vreeland spotted him under the U-Haul. Adams relies on *State v. Reeves*, 2019 MT 151, ¶ 13, 396 Mont. 230, 444 P.3d 394, to argue that "[w]hen the *only* basis for suspecting a specific person of wrongdoing is inferences that could be drawn from the conduct of virtually any law-abiding person, the resulting suspicion cannot, by definition, be particularized." (Emphasis added.) Adams provides examples of "facts that *alone* do not support a particularized suspicion of criminal activity."

¶14 Adams fails to account for the totality of the information available to Officer Vreeland when he approached the Cadillac to confirm or dispel his initial suspicions of criminal activity. Officer Vreeland's decision to further investigate the

6

Cadillac and its occupants was based on more than a single factor. Officer Vreeland noted the late hour, the commercial nature of the area, the male occupant evasively slinking down in the back seat, Officer Vreeland's familiarity with the female passenger, and her hurried entry into the car, along with his generalized knowledge that U-Hauls were easy prey for gasoline siphoning. The totality of these circumstances could reasonably support the inference that the Cadillac's occupants were possibly engaged in wrongdoing. Once Officer Vreeland ascertained that the male occupant was no longer in the vehicle, and that the female occupant did not know where he went, the officer's initial suspicions of wrongdoing found additional support, validating his subsequent search of the area which led to his discovery of Adams beneath the U-Haul with the gasoline cans and siphon hose. Adams' argument that evidence of his presence under the U-Haul with the gasoline cans and siphon hose should be suppressed as fruit of the poisonous tree is unavailing.

¶15 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, this case presents a question controlled by settled law or by the clear application of applicable standards of review. The Municipal Court did not err when it denied Adams' motion to suppress.

¶16 We affirm.

/S/ JAMES JEREMIAH SHEA

We Concur:

/S/ BETH BAKER
/S/ DIRK M. SANDEFUR
/S/ JIM RICE

7

Justice Ingrid Gustafson, specially concurring.

¶17  I concur in affirming the trial court's denial of Adams's motion to suppress and upholding his conviction, but do not concur with the majority's analysis with regard to particularized suspicion and probable cause to approach the Cadillac.

¶18  Based on the information Officer Vreeland possessed—the late hour, the unusual commercial location, his familiarity with the woman entering the vehicle and her disability, and the observation of a man in the back seat who appeared to slouch down to avoid detection—he had sufficient information to warrant inquiry with the woman based on the community caretaker doctrine.[1]  After making such inquiry and learning she was not in peril or in need of assistance, Officer Vreeland's contact with her ended and no arrest or charge was made of her.  This, however, did not require Officer Vreeland to leave the area or cease his patrol duties.  He was free to patrol the area as part of his usual job duties. Based on the information provided from the woman—her boyfriend left her alone at 3 a.m. in the vehicle and she did not know where he had gone—and his own information that U-Haul trucks were easy targets for siphoning gas, he appropriately patrolled the area.  He then discovered Adams hiding under a U-Haul with siphoning equipment and further observed two cans of gas, gasoline pouring onto the ground, and Adams with gasoline on

---

[1] While Officer Vreeland may also have had suspicion—but insufficient particularized suspicion or probable cause—that some other criminal activity was occurring which did not necessarily place the woman in peril, he had information that would lead a reasonable officer to determine the woman may need assistance such that it was appropriate to approach her under the community caretaker doctrine.

his hands and clothing.  At that point, Officer Vreeland had probable cause to believe Adams was engaging in gasoline theft and properly arrested him.

¶19     Officer Vreeland made appropriate contact with the woman, assured her safety, and appropriately used information known to him and from his lawful contact with the woman to further patrol the area.  The trial court properly denied Adams's motion for suppression. I concur in affirming Adams's conviction.

/S/ INGRID GUSTAFSON